The **FLORIDA DEMOCRATIC PARTY, Plaintiff,**

v.

**Glenda E. HOOD, etc., et al., Defendants.**

**No. 4:04CV395RH/WCS.**

United States District Court, N.D. Florida, Tallahassee Division.

Oct. 21, 2004.

Alan Harold Fein, Christopher L. Barnett, Stearns Weaver Miller Etc, Miami, FL, for Plaintiff.

George N Meros, Jr., Grayrobinson PA, Jonathan Alan Glogau, Attorney General, Tallahassee, FL, for Defendants.

### ORDER GRANTING PRELIMINARY INJUNCTION

HINKLE, Chief Judge.

In this action plaintiff asserts that a prospective voter in a federal election has a right under federal law (1) to cast a provisional ballot at a polling place even if

local officials assert that the voter is at the wrong polling place, and (2) to have that ballot counted, even if the voter is in fact at the wrong polling place, if the voter meets all requirements of state law other than the requirement to vote at the proper polling place. Plaintiff has moved for a preliminary injunction requiring the defendant election officials of the State of Florida to afford voters these rights in the November 2004 election. I conclude that plaintiff is likely to prevail on the merits with respect to the first claimed right but unlikely to prevail with respect to the second. I conclude further that plaintiff has met the other prerequisites to issuance of a preliminary injunction. I thus grant the motion for preliminary injunction in part.[1]

## I

### Background

The Florida Democratic Party brought this action against the Florida Secretary of State and Director of the Division of Elections in their official capacities. These are the state officials with ultimate responsibility for conducting the November 2004 election in Florida. On the ballot will be elections for President, United States Senate, and United States House of Representatives, as well as numerous state and local

offices and proposed constitutional amendments.

Plaintiff seeks relief under a section of the Help America Vote Act ("HAVA"), 42 U.S.C. § 15482, that gives voters in federal elections a right to cast "provisional" ballots. Provisional ballots are cast by persons who assert they are eligible to vote but who are determined on the spot by election workers to be ineligible. Each provisional ballot is kept in a separate envelope and counted only if it is ultimately determined that the voter was in fact eligible to vote. What it means to be "eligible" for these purposes is one of the issues in this litigation.

As required by § 15482, as well as by Florida Statutes §§ 101.048 and 101.049 (2003), defendants have established a system for provisional voting. Plaintiff asserts, however, that defendants' system violates HAVA because it does not allow provisional voting other than in the voter's assigned precinct.[2]

Under long-established Florida law, each voter is assigned to a precinct and may vote on election day only at the polling place for that precinct.[3] Defendants have announced that a provisional vote will be counted only if the voter casts the ballot at the proper polling place.[4] Further, de-

---

1. This order confirms rulings announced on the record and summarizes, without in all instances repeating, the grounds for the rulings.

2. Plaintiff also asserts this violates state law, but that is not a claim properly presented here, see, e.g., *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that the Eleventh Amendment bars any claim for injunctive relief based on state law against a state or against a state officer in his or her official capacity), and in any event the Florida Supreme Court has definitively rejected plaintiff's reading of Florida law. *See AFL–CIO v. Hood*, No. SC 04–1921 (Fla. Oct. 18, 2004).

3. Voters may vote during the two weeks prior to election day at one or more common locations and may cast absentee ballots without regard to precincts. Those options are not involved in the case at bar. On election day, a voter may vote only at the polling place for his or her assigned precinct.

4. This is confirmed, for example, by the certificate a voter will be required to sign in order to cast a provisional ballot. That certificate— a form promulgated by defendants—tells voters: "Your ballot will not count if you do not vote in the correct precinct." Complaint (document 1), ex. B, "Provisional Ballot Voter's Certificate."

fendants have issued an instructional manual telling poll workers not to allow a voter to cast a provisional ballot if the poll workers determine that the voter is at the *wrong* polling place.[5]

By its complaint in this action, plaintiff seeks declaratory and injunctive relief. Plaintiff asserts that a prospective voter in a federal election has a right under federal law to cast a provisional ballot, and to have that ballot counted, without regard to state law requiring that votes be cast only at an assigned polling place. Plaintiff has moved for a preliminary injunction.

Defendants initially contested both a voter's right to cast a ballot at a polling place believed by election workers to be the wrong polling place, and a voter's right to have such a ballot counted. During the hearing on plaintiff's motion for preliminary injunction and in response to questioning by the court, however, defendants withdrew their assertion that a voter cannot properly cast a provisional ballot if election workers conclude at that time that the voter is at the wrong polling place. Instead, defendants now concede that a voter must be allowed to cast a provisional ballot if the voter makes the declaration and written attestation required by federal law, even if election workers conclude the voter is at the wrong polling place. Defendants now have so advised the various county supervisors of elections by means of a memorandum explicitly supplementing the relevant provisions of the instructional manual. Defendants remain adamant, however, that a provisional ballot cannot properly be counted unless the voter was, in fact, at the correct polling place.

Defendants also defend this action, and resist issuance of a preliminary injunction, on the ground that HAVA's section on provisional voting creates no federal "right" and thus cannot be enforced in a private action under § 1983, and on the ground that plaintiff lacks standing to assert the rights of anyone to whom injury resulting from the actions at issue is more than a speculative possibility.

## II

### Preliminary Injunction Standards

As both sides agree, issuance of a preliminary injunction is governed by a familiar four-part test. The proponent must establish (1) a substantial likelihood of success on the merits; (2) that the proponent will suffer irreparable injury unless the injunction issues; (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998); *U.S. v. Lambert*, 695 F.2d 536 (11th Cir.1983).

Likelihood of success on the merits, in the context of this case, refers both to the substantive issues under HAVA and also to the questions of whether plaintiff has standing and may maintain a private right of action for enforcement of HAVA under § 1983.

## III

### The Statute

Congress enacted HAVA at least partly in response to perceived voting irregularities in the State of Florida during the November 2000 presidential election. *See*

---

**5.** Defendants' "Polling Place Procedures Manual" tells poll workers:

Do not allow a voter to vote a provisional ballot if you have determined the voter is registered in another precinct.

Direct the voter to the proper precinct. Complaint (document 1), ex. A, "Polling Place Procedures Manual" at 7.

148 Cong. Rec. S10488–02 (2002) (discussing the "flaws and failures of our election machinery" as showcased in the 2000 election). Among the perceived irregularities was that eligible voters had been removed from Florida voting rolls in the erroneous belief that they were convicted felons whose right to vote had not been restored. At the time of the November 2000 election, Florida law did not allow the casting of a ballot by a person who presented at a polling place on election day but who was determined by election officials at that time not to be eligible to vote. If the determination that the voter was not eligible later turned out to be erroneous, the problem could not be cured. Those turned away from the polls during the November 2000 election, even erroneously, thus had no opportunity to vote. Many other states also made no provision for the casting of a ballot by a person determined on the spot to be ineligible to vote.

HAVA dealt with this problem by creating a system for provisional balloting, that is, a system under which a ballot would be submitted on election day but counted if and only if the person was later determined to have been entitled to vote. The statute provides in relevant part:

(a) Provisional voting requirements

If an individual declares that such individual is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office, but the name of the individual does not appear on the official list of eligible voters for the polling place or an election official asserts that the individual is not eligible to vote, such individual shall be permitted to cast a provisional ballot as follows:

(1) An election official at the polling place shall notify the individual that the individual may cast a provisional ballot in that election.

(2) The individual shall be permitted to cast a provisional ballot at that polling place upon the execution of a written affirmation by the individual before an election official at the polling place stating that the individual is—

(A) a registered voter in the jurisdiction in which the individual desire to vote; and

(B) eligible to vote in that election.

(3) An election official at the polling place shall transmit the ballot cast by the individual or the voter information contained in the written affirmation executed by the individual under paragraph (2) to an appropriate State or local election official for prompt verification under paragraph (4).

(4) If the appropriate State or local election official to whom the ballot or voter information is transmitted under paragraph (3) determines that *the individual is eligible under State law to vote*, the individual's provisional ballot shall be counted as a vote in that election in accordance with State law.

42 U.S.C. § 15482 (emphasis added).

HAVA also requires state or local elections officials to post specified information at each polling place, including "information on the right of an individual to cast a provisional ballot and instructions on how to contact the appropriate officials if these rights are alleged to have been violated." 42 U.S.C. § 15482(b)(2)(E).

**IV**

**Enforcement under § 1983**

■ HAVA does not itself create a private right of action. Plaintiff claims, however, that HAVA creates a federal "right," and that that right may be enforced against state officials under 42 U.S.C. § 1983. I agree.

The law applicable to this issue is set forth in a line of cases recently summarized in *Schwier v. Cox*, 340 F.3d 1284 (11th Cir.2003). *See, e.g., Gonzaga University v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); *Wilder v. Virginia Hospital Assn.*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The inquiry begins with the question whether "Congress intended to create a federal right," *Schwier*, 340 F.3d at 1290, *quoting Gonzaga*, 536 U.S. at 283, 122 S.Ct. 2268, because § 1983 creates a cause of action for deprivation of "rights" (as well as "privileges" and "immunities") arising under federal law.

The relevant section of HAVA clearly evinces a congressional intention to create a federal right. Indeed, that is the whole point of the provision. And the various factors courts have cited as aids in analyzing this issue all cut in favor of recognizing a federal right. Thus HAVA speaks directly of individual voters, not just of actions required of elections officials, and HAVA even refers explicitly to the "right" of voters to cast a provisional ballot. *See* 42 U.S.C. § 15482(b)(2)(E). There is nothing precatory about the statute; Congress clearly imposed a mandate. And the mandate is one that is readily subject to judicial interpretation and enforcement, much like the many other rights that are the subject of litigation in federal courts every day. Finally, although HAVA has other enforcement mechanisms, they are not inconsistent in any respect with the availability of relief under § 1983. In sum, under *Schwier* and the line of cases it

interpreted, this statute clearly creates a federal right enforceable under § 1983.

That this is correct becomes even more clear when one steps back from the doctrinal wrangling and precise language of the cases and takes a longer view. Protecting federal rights of this type from state interference is very close to the core of § 1983 and indeed very close to one of the most critical components of federal jurisdiction. But for the ability to enforce federal rights against state interference in actions under § 1983, the schools might still be segregated. *See generally Monell v. Dep't of Social Servs.*, 436 U.S. 658, 685, 98 S.Ct. 2018, 2033, 56 L.Ed.2d 611 (1978) (summarizing Congress's lengthy discussion before passing § 1983 of intent "to give a broad remedy for violations of federally protected civil liberties"). Congress sought to protect the right to vote by adopting the provisional voting section of HAVA.[6]

# V

## Standing

 Plaintiff is a political party. It claims standing to assert its own rights as a political party and also the rights of its candidates and voters. In appropriate circumstances, an association or organization has standing to assert claims based on injuries to itself *or* its members. *See United Food and Commercial Workers v. Brown Group*, 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d 758(1996). In either case, the organization or the members must be affected in a tangible way. *See id.*

---

**6.** The reference to the old segregation cases is not entirely off the mark. There were claims that the disenfranchisement of voters in the 2000 election in Florida had a disparate racial impact, if it did not also arise from a racial animus. One need not assume those claims were well founded to recognize the appropriateness of providing a federal forum for a fair adjudication of such claims—or for enforcement of a statute designed in part to prevent the recurrence of circumstances that allowed such claims (well founded or not) to go unresolved.

Thus, for example, an organization has standing to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214(1982). And, in appropriate circumstances, an organization can challenge conduct that injures its members. *See, e.g., Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) ("we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit"); *International Union, UAW v. Brock*, 477 U.S. 274, 289, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986); *Doe v. Stincer*, 175 F.3d 879 (11th Cir.1999).

Under these principles, plaintiff has standing to assert, at least, the rights of its members who will vote in the November 2004 election. Plaintiff has not identified specific voters who will seek to vote at a polling place that will be deemed wrong by election workers, but this is understandable; by their nature, mistakes cannot be specifically identified in advance. Thus a voter cannot know in advance that his or her name will be dropped from the rolls, or listed in an incorrect precinct, or listed correctly but subject to a human error by an election worker who mistakenly believes the voter is at the wrong polling place. It is inevitable, however, that there will be such mistakes. The issues plaintiff raises are not speculative or remote; they are real and imminent. *See White's Place, Inc. v. Glover*, 222 F.3d 1327 (11th Cir. 2000) (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610

(2000)). Plaintiff has standing to pursue this litigation.

## VI

### Merits: Counting Votes Cast at the Wrong Polling Place

■ Plaintiff does not fare as well, however, on the merits. Florida law has long required voting at the proper polling place, and nothing in HAVA invalidates that approach. The purpose of HAVA's provisional voting section is not to eliminate precinct voting, but instead to ensure that voters are allowed to vote (and to have their votes counted) when they appear at the proper polling place and are otherwise eligible to vote. In the November 2000 election, this did not always occur, because voters who appeared at the proper polling place were sometimes turned away in error, including, for example, as a result of the removal of an eligible voter from the voting rolls based on a mistaken determination that he or she was a convicted felon whose rights had not been restored.

HAVA's provisional voting section in effect adopts a "perfect knowledge" approach. If a person presents at a polling place and seeks to vote, and if that person would be allowed to vote by an honest election worker with perfect knowledge of the facts and law, then the person's vote should count. The difficulty, of course, is that when the person presents, the election worker may not have perfect knowledge; the facts are not always at hand. It is this difficulty that provisional voting seeks to address. The person who claims eligibility to vote, but whose eligibility to vote at that time and place cannot be verified, is entitled under HAVA to cast a provisional ballot. On further review—when, one hopes, perfect or at least more perfect knowledge will be available—the vote will be counted or not, depending on whether the person was indeed entitled to vote at

that time and place. It is as simple as that.

This reading is consistent in all respects with the language of the statute. One and only one subsection of the statute addresses the issue of whether a provisional ballot will be counted. That subsection provides:

> If the appropriate State or local election official ... [ultimately] determines that *the individual is eligible under State law to vote*, the individual's provisional ballot shall be counted as a vote in that election in accordance with State law.

42 U.S.C. § 15482(a)(4) (emphasis added). The emphasized language could mean the vote counts if "the individual is eligible under State law to vote *in this election at some polling place*," or the language could mean the vote counts only if "the individual is eligible under State law to vote *in this election at this polling place*." Either reading is consistent with the language of the statute, but the latter reading is more appropriate because it requires the vote to be counted "in accordance with State law," words that Congress chose to include in the statute, perhaps in recognition of this very issue. Moreover, only this reading comports with the statute's purpose, as set forth above. And finally, only this reading comports with the statute's remarkably clear and consistent legislative history.[7]

In asserting the contrary, plaintiff says "eligible to vote" can only mean eligible to vote in this election, without regard to any specific polling place, because, plaintiff says, this is the plain meaning of "eligible." But there is nothing plain or unambiguous about this use of the word "eligible." To the contrary, "eligible" could mean any of several things. In one sense, any 18–year–old citizen of Florida is "eligible" to vote in the state's elections. As even plaintiff admits, however, such a person cannot vote unless he or she has duly registered to vote, and has done so at least 30 days in advance, as required by Florida law. HAVA certainly does *not* require the counting of the vote of an unregistered voter, or one who registers too late. So "eligible" as used in this subsection necessarily includes at least some element of compliance with applicable state procedures. Nothing in the "plain language" of the term "eligible" answers the question whether the term means eligible to vote at the particular polling place, or only eligible to vote somewhere.

Plaintiff also emphasizes references in other parts of the statute to whether the provisional voter is a "registered voter in the jurisdiction," "eligible to vote in an election for Federal office," or "eligible to vote in that election." 42 U.S.C. § 15482(a) & (a)(2)(B). As plaintiff notes, these phrases do not seem to include any restriction based on polling place. These phrases do not, however, appear in the subsection that addresses whether a vote will count. Instead, these phrases appear in the subsections addressing whether a

---

7. For example, a sponsor of the legislation said:

> [I]t is inevitable that voters will mistakenly arrive at the wrong polling place. If it is determined by the poll workers that the voter is registered but has been assigned to a different polling place, it is the intent of the authors of this bill that the poll worker can direct the voter to the correct polling place. In most States, the law is specific on the polling place where the voter is to

> cast his ballot. Again, this bill upholds state law on that subject.

148 Cong. Rec. S10488–02 at S10491 (daily e. Oct. 16, 2002) (statement of Senator Dodd). Later, a senator repeated the point:

> This provision is in no way intended to require any State or locality to allow voters to vote from any place other than the polling site where the voter is registered.

at S10493 (statement of Senator Bond). Plaintiff has cited nothing in the legislative history inconsistent with this analysis.

voter may submit a provisional ballot at all—a ballot that might or might not be counted, depending only on whether the voter is "eligible under State law to vote." 42 U.S.C. § 15482(a)(4). Plaintiff's assertion that there can be no difference between who may submit a provisional ballot, on the one hand, and whose ballot will count, on the other hand, is incorrect; the whole point of provisional balloting is that the vote may be cast but ultimately may or may not count. It is entirely reasonable to attribute to Congress a determination to make it easy to submit a provisional ballot to safeguard whatever right the voter had, but to leave to preexisting state law the question of whether the ballot should count, based on whatever the facts might ultimately turn out to be. That is what Congress did.

Defendants thus are correct when they assert HAVA does not require the counting of provisional ballots (or any other ballots) cast at the wrong polling place.[8]

## VII

### Merits: Casting a Provisional Ballot

■ Defendants are incorrect, however, in asserting that a person can be denied the right to cast a provisional ballot based on an on-the-spot determination by election workers that the person is at the wrong polling place. Election workers, like all of us, make mistakes, and the voting rolls are not infallible. That is why provisional balloting exists. The assumption implicit in defendants' original instructional manual—that election workers could never make a mistake when they conclude a voter is at the wrong polling place—cannot be squared with HAVA's provisional voting mandate. As defendants now concede, a person who meets the statutory prerequisites to casting a provisional ballot, by making the required declaration and executing the required affirmation, must be allowed to cast a provisional ballot. The ballot will count only if the person was indeed "eligible under State law to vote" in this election at this polling place.[9]

## VIII

### Remaining Prerequisites to Preliminary Injunction

■ Beyond a substantial likelihood of success on the merits, the proponent of a preliminary injunction must establish that the proponent will suffer irreparable inju-

---

8. Since this ruling was announced at the preliminary injunction hearing, other district courts sitting in other states have reached conflicting results on essentially this same issue. Compare *Hawkins v. Blunt*, No: 04–4177–CV–C–RED (W.D.Mo. Oct. 12, 2004) (concluding that HAVA does not require states to count provisional ballots cast at the wrong polling place); *and Colorado Commission Cause v. Davidson*, No: 04cv7709 (D.C.Co. Oct. 20, 2004) (same); *with Sadowsky County Democratic Party v. Blackwell*, No: 304cv7582 (N.D.Ohio Oct. 14, 2004) (concluding that provisional ballots must be counted even if cast in improper precinct); *and Bay County Democratic Party v. Land*, No: 04–10257–BC consolidated with *Michigan State Conference of NAACP v. Land*, No: 04–10267–BC (E.D.Mich. Oct. 19, 2004) (same).

9. On this narrow issue—the right of a person to cast a provisional ballot even when determined by poll workers to be at the wrong polling place—plaintiff's standing is at its lowest point. Plaintiff's standing to assert the rights of voters, see supra section V, extends only as far as the standing of the voters themselves. It is virtually certain that some voters will appear at the wrong polling place. It is considerably less certain that any voter will be *wrongly determined* to be at the wrong polling place. As a matter of common sense and human experience, it seems likely that such mistakes will occur. I conclude that plaintiff is likely to prevail even on this narrow segment of the standing issue. Before this case is finally addressed on the merits, the actual experience during the November 2004 election may make clear the appropriate resolution of this issue, one way or the other.

ry unless the injunction issues; that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and that the injunction would not be adverse to the public interest. Plaintiff easily meets these requirements in the case at bar.

A person who is denied the right to vote suffers irreparable injury. One need look no further than the 2000 election to confirm that that is so. There was post-election litigation seeking to reopen the polls or otherwise allow further voting by those who had been turned away, but that litigation went nowhere. The problem was irremediable. *See, e.g., Nat'l Coalition for Students with Disabilities v. Bush,* No: 4:00cv442 (Docket) (N.D.Fla. Nov. 29, 2000) (denying motion for order requiring state elections officials to allow voting in November 2000 election, after polls had closed, by persons who claimed they were prevented from voting by violations of federal law); *Dickens v. Florida,* No: 4:00cv420 (Docket) (N.D.Fla. Nov. 9, 2000) (same).

This irreparable injury to a voter is easily sufficient to outweigh any harm defendants may suffer from a narrow preliminary injunction requiring them to allow a person who asserts he or she is at the correct polling place to cast a provisional ballot. Indeed, such a preliminary injunction will injure defendants not at all; they already have acquiesced in the assertion that any such person is entitled to cast a provisional ballot, and already have taken steps to ensure that that will occur.[10]

And finally, the public interest favors issuance of such an injunction. It is in the public interest that each voter's right to vote be protected against administrative errors. That is why HAVA created a right to cast a provisional ballot. With one caveat, addressed below, it is in the public interest to allow a voter to cast a provisional ballot, so that if it ultimately is determined that the voter was indeed entitled to vote as he or she asserted, the vote will count, and the right to vote will not be lost.

The caveat is this. In their manual, defendants first instruct election workers who determine that a voter is at the wrong polling place to direct the voter to the correct polling place. That is not only proper but affirmatively commendable and far superior to simply allowing the voter to cast a provisional ballot. In most instances, the election workers will be correct that the voter is at the wrong polling place, and the vote thus will count only if the voter goes to the proper polling place. Simply accepting provisional ballots from such voters would itself raise grave concerns, of fairness if not also of legality. Nothing in the preliminary injunction that will be issued should be read to restrict in any way the authority of election workers to tell a voter he or she is at the wrong polling place and to direct the voter to the proper polling place. It is only if the voter disagrees—in effect, if the voter insists that he or she is at the correct polling place—that an election worker must allow the voter to cast a provisional ballot.

**10.** Defendants make no claim that their voluntary compliance with plaintiff's request on this issue renders the matter moot. *See Friends of the Earth, Inc. v. Laidlaw,* 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). A "claim for injunctive relief may become moot if: (1) if can be said with assurance that there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevoca-

bly eradicated the effects of the alleged violations." *Dow Jones & Co., Inc. v. Kaye,* 256 F.3d 1251, 1254 (11th Cir.2001). Defendants have distributed a memorandum that, if heeded, will cure the effects of the original instructions prohibiting election workers from allowing the casting of a provisional ballot in these circumstances, but it cannot be said that events have completely and irrevocably eradicated the effects of the original instructions.

The revised instructions defendants now have sent to election workers clearly set forth the proper approach, under which poll workers will diligently attempt to determine the correct situation, and, if they determine the voter is at the wrong polling place, will direct the voter to the proper polling place, accepting a provisional ballot only if the fully-informed voter still asserts he or she is in the right place. The preliminary injunction requiring that a voter be allowed to cast a provisional ballot when he or she meets the statutory requirements for doing so, coupled with defendants' instructions setting forth the appropriate handling of the matter by poll workers on the scene, will not disserve the public interest.

## IX

### Security

Federal Rule of Civil Procedure 65(c) states that no preliminary injunction shall issue

> except upon the giving of security by the applicant in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined....

At the hearings in the case at bar, defendants made no claim they will incur costs or damages as a result of this preliminary injunction, and defendants did not ask that plaintiff be required to post security.

Such costs or damages, if any, would be nominal. The mechanism for accepting provisional ballots is already in place, and defendants can comply (indeed, already have complied) with the preliminary injunction simply by issuing a memorandum.

If defendants assert plaintiff should be required to give security, defendants may file a motion to require the giving of security, including argument and any evidence deemed appropriate on the issue of the amount of security that should be required. Unless and until defendants file such a motion, defendants will be deemed fully secured, without the filing of security.

### Conclusion

Federal law does not invalidate the longstanding requirement in the State of Florida that a voter must vote on election day only at the voter's assigned polling place. Federal law does, however, mandate that any voter who makes a required declaration and written affirmation—essentially asserting the voter's eligibility to vote in the election at issue—must be allowed to cast a provisional ballot. Such a ballot must be counted if and only if the voter was eligible under state law to vote in that election at that polling place. For these reasons,

IT IS ORDERED:

1. Plaintiff's motion for preliminary injunction (document 4) is GRANTED IN PART. Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, shall not refuse to allow the casting of a provisional ballot by any person who presents at a polling place on November 2, 2004, but is determined by election workers to be at the wrong polling place, if the person makes an appropriate declaration and written affirmation in accordance with 42 U.S.C. § 15482(a) & (a)(2). This order does not restrict in any way the authority of election workers to direct such a person to the polling place deemed appropriate; to advise such a person that a provisional ballot cast at the wrong polling place will not be counted; and otherwise to investigate and advise the person with respect to his or her status as a voter.

2. Defendants' motion for judgment on the pleadings (documents 21 and 22) is DENIED.

SO ORDERED this 21st day of October, 2004.