RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 04a0367p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

SANDUSKY COUNTY DEMOCRATIC PARTY; THE OHIO
DEMOCRATIC PARTY; FARM LABOR ORGANIZING
COMMITTEE; NORTH CENTRAL OHIO BUILDING AND
CONSTRUCTION TRADES COUNCIL; and LOCAL 245
INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS,

*Plaintiffs-Appellees,*

Nos. 04-4265/4266

*v.*

J. KENNETH BLACKWELL,

*Defendant-Appellant
(04-4265),*

GREGORY L. ARNOLD; GLENN A. WOLFE; and THOMAS
W. NOE,

*Intervenors-Appellants
(04-4266).*

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 04-07582—James G. Carr, District Judge.

Submitted: October 23, 2004

Decided and Filed: October 26, 2004

Before: BOGGS, Chief Judge; GILMAN, Circuit Judge; and WEBER, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Richard G. Lillie, Gretchen A. Holderman, BENESCH, FRIEDLANDER, COPLAN &
ARONOFF, Cleveland, Ohio, Truman A. Greenwood, Theodore M. Rowen, James P. Silk, Jr., SPENGLER
NATHANSON, Toledo, Ohio, William M. Todd, SQUIRE, SANDERS & DEMPSEY, Columbus, Ohio,
Pierre H. Bergeron, SQUIRE, SANDERS & DEMPSEY, Cincinnati, Ohio, for Appellants. Fritz Byers,
Toledo, Ohio, Samuel Bagenstos, St. Louis, Missouri, for Appellees. David K. Flynn, Christopher C. Wang,
DEPARTMENT OF JUSTICE, CIVIL RIGHTS DIVISION, Washington, D.C., William N. Nettles,

_____

[*]The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by
designation.

1

Columbia, South Carolina, Kurtis A. Tunnell, Anne Marie Sferra, Maria Armstrong, BRICKER & ECKLER, Columbus, Ohio, John L. Ryder, HARRIS, SHELTON, DUNLAP, COBB & RYDER, Memphis, Tennessee, Kathleen A. Behan, Jennifer A. Karmonick, ARNOLD & PORTER, Washington, D.C., Johanna R. Pirko, Los Angeles, California, Raymond W. Lembke, Cincinnati, Ohio, for Amici Curiae.

---

## OPINION

---

PER CURIAM.  At bottom, this is a case of statutory interpretation.  Does the Help America Vote Act require that all states count votes (at least for most federal elections) cast by provisional ballot as legal votes, even if cast in a precinct in which the voter does not reside, so long as they are cast within a "jurisdiction" that may be as large as a city or county of millions of citizens?  We hold that neither the statutory text or structure, the legislative history, nor the understanding, until now, of those concerned with voting procedures compels or even permits that conclusion.  Thus, although we affirm many of the rulings of the district court and its proper orders requiring compliance with HAVA's requirements for the casting of provisional ballots, we hold that ballots cast in a precinct where the voter does not reside and which would be invalid under state law for that reason are not required by HAVA to be considered legal votes.

To hold otherwise would interpret Congress's reasonably clear procedural language to mean that political parties would now be authorized to marshal their supporters at the last minute from shopping centers, office buildings, or factories, and urge them to vote at whatever polling place happened to be handy, all in an effort to turn out every last vote regardless of state law and historical practice.  We do not believe that Congress quietly worked such a revolution in America's voting procedures, and we will not order it.

## I

The States long have been primarily responsible for regulating federal, state, and local elections.  These regulations have covered a range of issues, from registration requirements to eligibility requirements to ballot requirements to vote-counting requirements.  *See Storer v. Brown*, 415 U.S. 724, 730 (1974) ("[T]he States have evolved comprehensive, and in many respects complex, election codes regulating in most substantial ways, with respect to both federal and state elections, the time, place, and manner of holding primary and general elections, the registration and qualifications of voters, and the selection and qualification of candidates.").  One aspect common to elections in almost every state is that voters are required to vote in a particular precinct.  Indeed, in at least 27 of the states using a precinct voting system, including Ohio, a voter's ballot will only be counted as a valid ballot if it is cast in the correct precinct.[1]

The advantages of the precinct system are significant and numerous: it caps the number of voters attempting to vote in the same place on election day; it allows each precinct ballot to list all of the votes a citizen may cast for all pertinent federal, state, and local elections, referenda, initiatives, and levies; it allows

---

[1] *See, e.g.*, Ala. Code § 17-10A-2 (1975 & Supp. 2003); Ariz. Rev. Stat. § 16-584C (2004); Colo. Rev. Stat. § 1-9-304.5 (2004); Fla. Stat. Ann. § 101.048 (West 2004); Mass. Gen. Laws ch. 54, § 76C (2004); Mich. Comp. Laws § 168.523a (2004); Mont. Code Ann. § 13-13-601 (2003); Neb. Rev. Stat. § 32-915 (2003); Nev. Rev. Stat. 293.3082 (2003); N.J. Stat. Ann. § 19:53C-20 (West 2003); Ohio Rev. Code Ann. § 3599.12 (West 2004); Okla. Stat. tit. 26, § 16-203 (2003); S.C. Code Ann. § 7-13-820 (Law. Co-op. 2003); S.D. Codified Laws § 12-18-40 (Michie 2003); Tenn. Code Ann. § 2-7-112 (2003); Tex. Elec. Code Ann. § 63.011 (2004); Va. Code Ann. § 24.2-653 (Michie 2002); W. Va. Code § 3-2-1 (2004); Wyo. Stat. Ann. § 22-15-105 (Michie 2002).  In addition, the election board of the District of Columbia, which operates under congressional supervision, if not direct control, has stated that it will require voters to cast provisional ballots at the proper polling place. *Moving Elections Forward in the District of Columbia: A Plan for Implementing the Help America Vote Act in the District of Columbia* (Aug. 2003) at 13, *reprinted in* 69 Fed. Reg. 14,180, 14,186 (Mar. 24, 2004) (stating that "[s]ince voters casting special [provisional] ballots in the District of Columbia are required to cast these ballots in their assigned precinct, the Board will act to inform all voters of their assigned precinct in an election mailing prior to Election Day.").

each precinct ballot to list only those votes a citizen may cast, making ballots less confusing; it makes it easier for election officials to monitor votes and prevent election fraud; and it generally puts polling places in closer proximity to voter residences.

The responsibility and authority of the States in this field are not without limit. Although the United States Constitution, and Supreme Court decisions interpreting the Constitution, give primary responsibility for administering and regulating elections to the States, the States must adhere to certain constitutional and statutory requirements. States may not in any election deny or abridge the right to vote on the basis of race, *see* U.S. Const. amend. XV § 1, for example, and must adhere to the principle of one person, one vote, *see Reynolds v. Sims*, 377 U.S. 533, 565-566 (1964). In addition, Congress has imposed upon the States certain statutory requirements for the administration of federal elections, such as the National Voter Registration Act, 42 U.S.C. § 1973gg *et seq.* ("NVRA"). In 2002, Congress passed the Help America Vote Act, Pub. L. 107-252. Title III, § 302, 116 Stat. 1706 (codified at 42 U.S.C. § 15301 *et seq.*) ("HAVA"), which is the subject of this appeal.

HAVA was passed in order to alleviate "a significant problem voters experience[, which] is to arrive at the polling place believing that they are eligible to vote, and then to be turned away because the election workers cannot find their names on the list of qualified voters." H.R. Rep. 107-329 at 38 (2001). HAVA dealt with this problem by creating a system for provisional balloting, that is, a system under which a ballot would be submitted on election day but counted if and only if the person was later determined to have been entitled to vote.

Section 302 of HAVA, the section most pertinent to this appeal, requires States to provide voters with the opportunity to cast provisional ballots and to post certain information about provisional ballots at polling places on election day. The section's requirements relating to the casting of provisional ballots are as follows:

> (a) Provisional voting requirements. If an individual declares that such individual is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office, but the name of the individual does not appear on the official list of eligible voters for the polling place or an election official asserts that the individual is not eligible to vote, such individual shall be permitted to cast a provisional ballot as follows:
>
> > (1) An election official at the polling place shall notify the individual that the individual may cast a provisional ballot in that election.
> > (2) The individual shall be permitted to cast a provisional ballot at that polling place upon the execution of a written affirmation by the individual before an election official at the polling place stating that the individual is--
> > > (A) a registered voter in the jurisdiction in which the individual desires to vote; and
> > > (B) eligible to vote in that election.
> > (3) An election official at the polling place shall transmit the ballot cast by the individual or the voter information contained in the written affirmation executed by the individual under paragraph (2) to an appropriate State or local election official for prompt verification under paragraph (4).
> > (4) If the appropriate State or local election official to whom the ballot or voter information is transmitted under paragraph (3) determines that the individual is eligible under State law to vote, the individual's provisional ballot shall be counted as a vote in that election in accordance with State law.
> > (5)(A) At the time that an individual casts a provisional ballot, the appropriate State or local election official shall give the individual written information that states that any individual who casts a provisional ballot will be able to ascertain under the system established under subparagraph (B) whether the vote was counted, and, if the vote was not counted, the reason that the vote was not counted.

(B) The appropriate State or local election official shall establish a free access system (such as a toll-free telephone number or an Internet website) that any individual who casts a provisional ballot may access to discover whether the vote of that individual was counted, and, if the vote was not counted, the reason that the vote was not counted.

42 U.S.C. § 15482.

In essence, HAVA's provisional voting section is designed to recognize, and compensate for, the improbability of "perfect knowledge" on the part of local election officials. *See Florida Democratic Party v. Hood*, No. 4:04cv395-RH/WCS, at 13 (N.D. Fla. Oct. 21, 2004) (order granting preliminary injunction). "If a person presents at a polling place and seeks to vote, and if that person would be allowed to vote by an honest election worker with perfect knowledge of the facts and law, then the person's vote should count." *Ibid.* But because any given election worker may not in fact have perfect knowledge, the person who claims eligibility to vote, but whose eligibility to vote at that time and place cannot be verified, is entitled under HAVA to cast a provisional ballot. *Ibid.* "On further review—when, one hopes, perfect or at least more perfect knowledge will be available—the vote will be counted or not, depending on whether the person was indeed entitled to vote at that time and place." *Ibid.*

## II

On September 27, 2004, the Sandusky County Democratic Party, the Ohio Democratic Party, and three labor unions ("Appellees") filed an action in the United States District Court for the Northern District of Ohio against J. Kenneth Blackwell, Ohio Secretary of State ("the Secretary").[2] Appellees' Complaint alleged that the Secretary's promulgation to Ohio County Boards of Elections of *Ohio Secretary of State Directive 2004-33* ("*Directive 2004-33*") conflicts with the requirements of HAVA. *Directive 2004-33* states, in pertinent part, that:

State law further provides that an eligible elector who moves from one Ohio precinct to another before an election may, in accordance with the procedures set forth in R.C. 3503.16, update his or her existing voter registration to the new voting residence address and vote a provisional ballot for the precinct in which the person's new voting residence is located. The provisional ballot will be counted in the official canvass if the county board of elections confirms that the person was timely registered to vote in another Ohio precinct, and that the person did not vote or attempt to vote in that election using the person's former voting residence address.

Because R.C. 3599.12 specifically prohibits anyone from voting or attempting to vote in any election in a precinct in which that person is not a legally qualified elector, pollworkers in a precinct must confirm before issuing a provisional ballot that the person to whom the provisional ballot will be issued is a resident of the precinct, or portion of the precinct, in which the person desires to vote.

. . . .

Only after the precinct pollworkers have confirmed that the person is eligible to vote in that precinct shall the pollworkers issue a provisional ballot to that person. Under no circumstances shall precinct pollworkers issue a provisional ballot to a person whose address is not located in the precinct, or portion of the precinct, in which the person desire to vote.

*Directive 2004-33*. Appellees alleged that Directive 2004-33 violates HAVA because, *inter alia*, it limits a voter's right to cast a provisional ballot to those situations where a voter has moved from one Ohio precinct to another; allows poll workers to withhold a provisional ballot from anyone who is not -- according

---

[2]On October 4, 2004, Thomas W. Noe, Glenn A. Wolfe, and Gregory L. Arnold ("Intervenors") filed a motion to intervene as individual voters. The district court granted that motion on October 7, 2004.

to the poll worker's on-the-spot determination at the polling place -- a resident of the precinct in which the would-be voter desires to cast a provisional ballot; does not require that potential voters be notified of their right to cast a provisional ballot; and unduly limits the circumstances in which a provisional ballot will be counted as a valid ballot.

On October 14, 2004, the district court issued an Order granting preliminary injunctive relief to Appellees. *Sandusky County Democratic Party v. Blackwell*, No. 3:04CV7582 (N.D. Ohio Oct. 14, 2004) ("Order"). The district court found that HAVA created an individual right to cast a provisional ballot in accordance with the requirements of 42 U.S.C. § 15482(a), that this right is individually enforceable under 42 U.S.C. § 1983, and that Appellees had standing to bring a § 1983 action on behalf of Ohio voters. The district court's injunction required that the Secretary issue a revised directive that (1) permits any voter to cast a provisional ballot upon affirming that he or she is eligible to vote and is registered to vote in the county in which he or she wishes to vote; (2) requires poll workers to notify any voter making this affirmation of his or her right to cast a provisional ballot, even if the poll worker determines that the voter does not reside in the precinct in which he or she is attempting to vote; and (3) that provisional ballots cast by a voter in the county in which he or she is registered to vote must be counted as a valid ballot even if it was not cast in the precinct in which the voter resides.

On October 15, 2004, Defendant-Appellant and Intervenors appealed the district court's Order to this court. On October 22, 2004, in response to the district court's October 14 Order, and two subsequent Orders issued on October 20, 2004, the Secretary sent to all Ohio County Election Boards two revised directives, designed to comply with the district court's injunction in the event that the October 14, 2004 Order was upheld by this court in full or in part. The revised directives are largely identical, and differ primarily with regard to whether provisional ballots cast outside a voter's precinct of residence will be counted as valid ballots.[3]

## III

HAVA does not itself create a private right of action. Appellees contend that HAVA creates a federal right enforceable against state officials under 42 U.S.C. § 1983. With respect to the right to cast a provisional ballot under the circumstances described in HAVA § 302(a), we agree.

Section 1983 provides a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution or the laws of the United States. *Maine v. Thiboutot*, 448 U.S. 1, 4-8 (1980). Only "unambiguously conferred" rights will support a § 1983 action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). "Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States," and, therefore, "it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Ibid*. In *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997), the Supreme Court set out three factors that guide the inquiry into whether Congress intended to create a right:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the

---

[3] We note that Revised Directive Number 2, primarily at issue in this Opinion, does not contain any reference to the obligation of poll workers to provide individuals casting a provisional ballot "written information that states that any individual who casts a provisional ballot will be able to ascertain . . . whether the vote was counted, and, if the vote was not counted, the reason that the vote was not counted." 42 U.S.C. § 15482(a)(5)(A). Because such language is contained in Revised Directive Number 1, we assume that its absence from Directive Number 2 is merely a drafting error, and that the final Directive implemented by the Secretary will contain this language, without which the Directive cannot fully comport with the requirements of HAVA.

provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Ibid.* (citations omitted).

If plaintiffs show that the statute creates a right, the right is presumptively enforceable under § 1983. *Gonzaga*, 536 U.S. at 284. Plaintiffs "do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Ibid.* The state may rebut this presumption by showing that Congress specifically foreclosed a remedy under § 1983. *Id.* at 285 n.4. "The state's burden is to demonstrate that Congress shut the door to private enforcement either expressly, through 'specific evidence from the statute itself,' or 'impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Ibid.* (internal citations omitted).

The rights-creating language of HAVA § 302(a)(2) is unambiguous. That section states that upon making the required affirmation, an "*individual shall be permitted* to cast a provisional ballot." 42 U.S.C. § 15482(a)(2) (emphasis added). This language mirrors the rights-creating language of Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972, which both state that "[n]o person . . . shall . . . be subjected to discrimination," *see* 42 U.S.C. 2000d; 20 U.S.C. 1681(a), and which both create individual rights enforceable under § 1983, *see Gonzaga*, 536 U.S. at 284. By way of contrast, this language markedly differs from the statutory language found by the Supreme Court in *Gonzaga* to be insufficiently focused on the benefited class to create an individually enforceable right: "[n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of educational records . . . ." *See id.* at 279 (citing 20 U.S.C. § 1232g(b)(1)). HAVA also refers explicitly to the "*right of an individual to cast a provisional ballot,*" 42 U.S.C. § 15482(b)(2)(E) (emphasis added), and requires states to post information at polling places about this right along with "instructions on how to contact the appropriate officials if *these rights* are alleged to have been violated," *ibid.* (emphasis added). The right to cast a provisional ballot is neither vague nor amorphous, and is no less amenable to judicial interpretation and enforcement than any other federal civil right. *See Blessing*, 520 U.S. at 340-41. And there can be no doubt that HAVA as a whole is "couched in mandatory, rather than precatory, terms." *See id.* at 341.

Individual enforcement of this right under § 1983 is not precluded by either the explicit language of HAVA, or by a comprehensive enforcement scheme incompatible with individual enforcement. We have reviewed both HAVA's requirement that those States wishing to receive certain types of federal funding must provide administrative procedures by which citizen complaints may be reviewed and resolved, *see* 42 U.S.C. § 15512, and its provision that the U.S. Attorney General may bring a civil action to enforce HAVA's requirements, *see id.* § 15511. We do not find that these provisions, taken together, indicate a congressional intention to "shut the door" to federal judicial review of state actions, which would be otherwise unavailable to citizens whose right to vote provisionally has been denied or abridged.

## IV

We review the district court's determination of standing *de novo* because the issue of whether a claimant has constitutional standing is a question of law. *United States v. Bridwell's Grocery & Video*, 195 F.3d 819, 821 (6th Cir. 1999).

Appellees are political parties and labor organizations. They claim standing to assert their own rights, and also the rights of their individual members. In order to satisfy the standing requirements of Article III of the Constitution, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw*

*Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 181 (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). The individual participation of an organization's members is "not normally necessary when an association seeks prospective or injunctive relief for its members." *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996) (citing *Hunt*, 432 U.S. at 343).

Under these principles, Appellees have standing to assert, at least, the rights of their members who will vote in the November 2004 election. Appellees have not identified specific voters who will seek to vote at a polling place that will be deemed wrong by election workers, but this is understandable; by their nature, mistakes cannot be specifically identified in advance. Thus, a voter cannot know in advance that his or her name will be dropped from the rolls, or listed in an incorrect precinct, or listed correctly but subject to a human error by an election worker who mistakenly believes the voter is at the wrong polling place. It is inevitable, however, that there will be such mistakes. The issues Appellees raise are not speculative or remote; they are real and imminent.

## V

HAVA requires that any individual affirming that he or she "is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office . . . shall be permitted to cast a provisional ballot." *See* 42 U.S.C. § 15482(a).

*Directive 2004-33* contravenes this requirement because it requires that a voter's residence in a precinct be determined on the spot by a poll worker, and empowers poll workers to deny a voter a provisional ballot if the voter's residence in the correct precinct cannot be confirmed. *See Directive 2004-33* ("Before issuing a provisional ballot as provided for under state or federal law, the pollworkers must confirm that the voting residence address claimed by the voter is located within the area shown on the precinct map and listed on the street listing."). As we explained above, the primary purpose of HAVA was to prevent on-the-spot denials of provisional ballots to voters deemed ineligible to vote by poll workers. Under HAVA, the only permissible requirement that may be imposed upon a would-be voter before permitting that voter to cast a provisional ballot is the affirmation contained in § 15482(a): that the voter is a registered voter in the jurisdiction in which he or she desires to vote, and that the voter is eligible to vote in an election for federal office.

Unfortunately, HAVA does not define what "jurisdiction" means in this context, which leaves unclear whether a voter must affirm that he or she is registered to vote in the *precinct* in which he or she desires to vote, the *county* in which he or she desires to vote, or even simply the *state* in which he or she desires to vote. The district court concluded that the term should be given the same meaning as the term "registrar's jurisdiction" is given in the NVRA; namely the geographic reach of the unit of government that maintains the voter registration rolls, *see* 42 U.S.C. § 1973gg-6(j), which in Ohio is each county board of election, *see* Ohio Rev. Code Ann. §§ 3501.11 (U), (Y) (West 2004). The district court offered two bases for its conclusion: first, the statement by Senator Dodd on the Senate floor that "[i]t is our intent that the word "jurisdiction" . . . has the same meaning as the term "registrar's jurisdiction" in section 8(j) of the National Voter Registration Act," 148 Cong. Rec. S2535 (daily ed. Apr. 11, 2002); and second, the court's belief that permitting provisional ballots to be cast by voters outside their home precincts would further HAVA's purpose of preserving the federal franchise.[4]

---

[4] Appellees contend that a further reason for concluding that the NVRA's definition of "registrar's jurisdiction" be imported to HAVA is that "Congress directed that the statute be construed in harmony with" the NVRA. *See* Appellee's Br. at 50. It is true that section 906 of HAVA provides that it should not be construed to supersede, restrict, or limit a number of other statutes,

We disagree with the district court's interpretation of the term "jurisdiction." Senator Dodd's statement must be weighed against other statements in HAVA's legislative history that suggest quite the contrary -- that jurisdiction means the particular state subdivision within which a particular State's laws require votes to be cast. Senator Bond, one of HAVA's floor managers, stated:

> Congress has said only that voters in Federal elections should be given a provisional ballot if they claim to be registered in a particular jurisdiction and that jurisdiction does not have the voter's name on the list of registered voters. . . . *This provision is in no way intended to require any State or locality to allow voters to vote from any place other than the polling site where the voter is registered.*

148 Cong. Rec. S10488, S10493 (daily ed. Oct. 16, 2002) (emphasis added). Senator Bond also noted:

> Additionally, it is inevitable that voters will mistakenly arrive at the wrong polling place. If it is determined by the poll worker that the voter is registered but has been assigned to a different polling place, it is the intent of the authors of this bill that the poll worker can direct the voter to the correct polling place. *In most states, the law is specific on the polling place where the voter is to cast his ballot. Again, this bill upholds state law on that subject.*

148 Cong. Rec. at S10491 (emphasis added).

Nor can the use of the NVRA's definition of "registrar's jurisdiction" be justified on the ground that doing so will further HAVA's purpose of preserving the franchise. For one thing, permitting voters to cast ballots in any precinct within their county of residence may cause logistical problems at certain favored polling places that outweigh some or all of the benefits expected by the district court. For another, even if importing language from the NVRA will in this case have the effect of expanding the opportunities of Ohioans to vote on election day, so too would ordering that provisional ballots may be cast by any Ohio voter anywhere in the state. Absent an independent reason for turning to the NVRA's definition, the mere fact that equating "jurisdiction" with "county" may have a salutary effect on the franchise cannot suffice to justify reading the language of HAVA in this way.

"'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (internal citation omitted). In the absence of a compelling reason for defining HAVA's use of this term to mean the geographic reach of the unit of government that maintains the voter registration rolls, we look to the overall scheme of the statute to determine its meaning. *See United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000) (ruling that "this court also looks to the language and design of the statute as a whole in interpreting the plain meaning of statutory language") (internal quotation marks and citation omitted). Nowhere in the language or structure of HAVA as a whole is there any indication that the Congress intended to strip from the States their traditional responsibility to administer elections; still less that Congress intended that a voter's eligibility to cast a provisional ballot should exceed her eligibility to cast a regular ballot. After all, the whole point of provisional ballots is to allow a ballot to be cast by a voter who claims to be eligible to cast a regular ballot, pending determination of that eligibility.

In Ohio, like many other states, a voter may cast a ballot only in his or her precinct of residence. *See* Ohio Rev. Code Ann. § 3503.01 (West 2004) (providing that an eligible voter "may vote at all elections in the precinct in which the citizen resides"); Ohio Rev. Code Ann. § 3599.12(A)(1) (West 2004) (making it a crime under Ohio law for a voter to knowingly vote anywhere except in the precinct in which he or she resides). As such, in Ohio, HAVA requires that a provisional ballot be issued only to voters affirming that they are eligible to vote and are registered to vote in the precinct in which they seek to cast a ballot.

---

including the NVRA, but failing to import the NVRA's definition of "registrar's jurisdiction" would in no way supersede, restrict, or limit the NVRA.

Directive Number 2 satisfies this requirement, and is even more lenient.  Directive Number 2 requires only that if an individual wishes to cast a provisional ballot after being advised that he or she does not appear to be eligible to vote in the precinct in question, the individual shall be permitted to cast a provisional ballot upon executing the following written affirmation:

> I affirm that my name is _____, that my date of birth is _____, and at this time my voting residence is _____ in the City/Village of _____ in _____ County of the State of Ohio and that this is the only ballot I am casting in this election.
>        If I am voting elsewhere than the precinct where I reside, I understand that my entire ballot may not be counted.

Although this affirmation does not require voters to affirm in so many words that they are eligible to vote or registered in their assigned precinct, this aspect of Directive Number 2 comports with HAVA's requirements because it asks less of voters than HAVA permits.   HAVA's requirements "are minimum requirements," permitting deviation from its provisions provided that such deviation is "more strict than the requirements established under" HAVA in terms of encouraging provisional voting, and is "not inconsistent with the Federal requirements" mandated by HAVA.  *See* 42 U.S.C. § 15484.

HAVA is quintessentially about being able to *cast* a provisional ballot.  No one should  be "turned away" from the polls, but the ultimate legality of the vote cast provisionally is generally a matter of state law.  Any error by the state authorities may be sorted out later, when the provisional ballot is examined, in accordance with subsection (a)(4) of section 15482.  But the voter casts a provisional ballot at the peril of not being eligible to vote under state law; if the voter is not eligible, the vote will then not be counted.  Directive 2 exactly preserves this distinction, while generally curing the other defects correctly found by the district court.

## VI

In addition to finding that HAVA requires that voters be permitted to cast provisional ballots upon affirming their registration to vote in the county within which they desire to vote, the district court also held that provisional ballots must be counted as valid ballots when cast in the correct county.  We disagree.

The only subsection of HAVA that addresses the issue of whether a provisional ballot will be counted as a valid ballot conspicuously leaves that determination to the States.  That subsection provides:

> "If the appropriate State or local election official to whom the ballot or voter information is transmitted under paragraph (3) determines that the individual is eligible under State law to vote, the individual's provisional ballot shall be counted as a vote in that election in accordance with State law."

42 U.S.C. § 15482(a)(4).  The district court interpreted this subsection to require the following procedure after a provisional ballot has been cast:  First, an election official determines whether the individual who cast the ballot was eligible to vote in the broadest possible sense of that term.  In essence, the district court would have state officials ask only whether a voter was eligible to vote *in some polling place* within the county at the start of election day.  Even someone who has "voted 'improperly'" remains eligible in this sense of eligibility.  Order at 26.  Second, if the voter is deemed eligible to vote, the provisional ballot is deemed valid, and may then be tallied along with all the other valid ballots in accordance with State rules for tallying votes accurately and promptly.  The district court, in other words, interpreted HAVA as leaving to state law only "*how* the ballots are counted" while federal law determines "*whether* they are to be counted."  *Id.* at 27.  Because the district court found that voters are eligible to vote under Ohio law anywhere in their county of residence, the court held that a provisional ballot cast anywhere in a voter's county of residence must be counted as valid.

The district court's interpretation of this subsection of HAVA is incorrect. To read "eligible under state law to vote" so broadly as to mean not only that a voter must simply be eligible to vote *in some polling place* within the county, but remains eligible even after casting an improper ballot would lead to the untenable conclusion that Ohio must count as valid a provisional ballot cast in the correct county even it is determined that the voter in question had previously voted elsewhere in that county; an impropriety that would not render that voter ineligible based upon the district court's interpretation of HAVA. State law concerning eligibility to vote is not limited to facts about voters as they arise from slumber on election day; they also stipulate, for example, that a voter is eligible to vote only once in each election, and, in Ohio, where a voter is eligible to cast a ballot. In other words, being eligible under State law to vote means eligible to vote *in this specific election in this specific polling place*.

Under Ohio law, a voter is eligible to vote in a particular polling place only if he or she resides in the precinct in which that polling place is located:

> Every citizen of the United States who is of the age of eighteen years or over and who has been a resident of the state thirty days immediately preceding the election at which the citizen offers to vote, is a *resident of the county and precinct* in which the citizen offers to vote, and has been registered to vote for thirty days, has the qualifications of an elector and *may vote at all elections in the precinct in which the citizen resides*.

Ohio Rev. Code Ann. § 3503.01 (West 2004) (emphasis added); *see also Bell v. Marinko*, 235 F. Supp. 2d 772, 776 (N.D. Ohio 2002), *aff'd*, 367 F.3d 588 (6th Cir. 2004) ("One simply cannot be a 'qualified elector' entitled to vote unless one resides in the precinct where he or she seeks to cast [a] ballot.") (citing *In re Protest Filed with Franklin County Bd. of Elections*, 552 N.E.2d 150, 152 (Ohio 1990)). Indeed, it is a crime under Ohio law for a voter knowingly to vote anywhere except in the precinct in which he or she resides. Ohio Rev. Code Ann. § 3599.12(A)(1). Under Ohio law, then, only ballots cast in the correct precinct may be counted as valid.

There is no reason to think that HAVA, which explicitly defers determination of whether ballots are to be counted to the States, should be interpreted as imposing upon the States a federal requirement that out-of-precinct ballots be counted, thereby overturning the longstanding precinct-counting system in place in more than half the States. The phrase "eligible under State law to vote" certainly provides no reason to believe this was Congress's intent. Even if one concludes from our disagreement with the district court's interpretation of this phrase that it is somewhat ambiguous, that fact alone is an insufficient basis for inferring a congressional intent to impose federal requirements upon the States in this way. *See United States v. Bass*, 404 U.S. 336, 349 (1971) ("[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance."); *see also Penn Dairies, Inc. v. Milk Control Comm'n*, 318 U.S. 261, 275 (1943) ("An unexpressed purpose of Congress to set aside statutes of the states regulating their internal affairs is not lightly to be inferred and ought not to be implied where the legislative command, read in the light of its history, remains ambiguous.").

Nor does the legislative history of the statute provide any reason to believe that HAVA requires that ballots cast in the wrong precinct be counted. Senator Bond, for example, stated that "ballots will be counted according to state law. . . . It is not the intent of the authors to overturn State laws regarding registration or state laws regarding the jurisdiction in which a ballot must be cast to be counted." 148 Cong. Rec. at S10491. Senator Dodd also noted: "Whether a provisional ballot is counted or not depends solely on State law, and the conferees clarified this by adding language in section 302(a)(4) stating that a voter's eligibility to vote is determined under State law." 148 Cong. Rec. at S10510. Moreover, he added that "[n]othing in this compromise usurps the state or local election official's sole authority to make the final determination with respect to whether or not an applicant is duly registered, whether the voter can cast a regular ballot, or whether that vote is duly counted." *Ibid. See also id.* at S10504 (noting that HAVA does not establish "a Federal definition of when a voter is registered or how a vote is counted").

We therefore hold that HAVA does not require that any particular ballot, whether provisional or "regular," must be counted as valid. States remain free, of course, to count such votes as valid, but remain equally free to mandate, as Ohio does, that only ballots cast in the correct precinct will be counted.

It should be noted that this holding in no way rests upon our discussion above about the meaning of the term "jurisdiction." Even if the district court was correct to find that provisional ballots must be *offered* to any voter affirming residence in the county in which he or she desires to vote, it remains true that HAVA's single provision relating to the counting of ballots refers only to eligibility under State law to vote, and makes no reference either explicitly or implicitly to the jurisdiction in which a provisional ballot was cast.[5] In any event, there is no contradiction between requiring all voters in a county to be given a provisional ballot in case they are subsequently found to reside in the precinct in which they seek to vote, and then allowing the state to continue its practice of not counting votes cast outside of precinct. Although Congress certainly intended that some provisional ballots would be counted as valid after it was determined that voters should in fact have appeared on the list of qualified voters, there is no suggestion in either the legislative history of the statute or the statutory text that Congress intended all provisional ballots to be deemed valid.

Directive Number 2 therefore comports with HAVA's requirements insofar as it states that "An individual's provisional ballot will only be counted if he or she has voted in the proper precinct," and requires that poll workers "[a]dvise the voter that, if he or she does not vote at the correct precinct, the voter's ballot will not be counted for any issue or office."

### VII

The judgment of the district court is therefore AFFIRMED IN PART, REVERSED IN PART, and REMANDED to the district court for further proceedings consistent with this opinion. The district court may order the Secretary to enforce the proffered "Revised Directive Number 2," with any appropriate technical modifications such as noted at footnote 3 of this opinion. The district court may not order the enforcement of "Revised Directive Number 1" or any other order requiring the counting of provisional votes cast outside the precinct of the voter's residence.

---

[5]Indeed, the requirement that ballots be issued county-wide is, even on the district court's reading, a federal requirement, which cannot be read into the statement that votes must be counted if a voter is determined to be eligible under State law.