*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0029P (6th Cir.)
File Name: 00a0029p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

    *v.*     No. 99-1607

SAMUEL CHOICE,
   *Defendant-Appellant.*



Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-80498—Patrick J. Duggan, District Judge.

Argued: October 28, 1999

Decided and Filed: January 20, 2000

Before: WELLFORD, MOORE, and GILMAN, Circuit
Judges.

———————

**COUNSEL**

**ARGUED:** Rhonda R. Brazile, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.
Jennifer M. Gorland, OFFICE OF THE U.S. ATTORNEY,
Detroit, Michigan, for Appellee. **ON BRIEF:** Rhonda R.
Brazile, Andrew Densemo, FEDERAL PUBLIC
DEFENDERS OFFICE, Detroit, Michigan, for Appellant.

1

Jennifer M. Gorland, OFFICE OF THE U.S. ATTORNEY, Detroit, Michigan, for Appellee.

———————

**OPINION**

———————

KAREN NELSON MOORE, Circuit Judge.  Defendant-appellant Samuel Choice, a federally licensed firearms dealer, pleaded guilty to failing to make a record of a firearm sale in violation of 18 U.S.C. § 922(b)(5).  A condition of the plea agreement was that the district court would decide whether the offense to which Choice had pleaded guilty was a felony or a misdemeanor.  The district court found that Choice pleaded guilty to a felony, and Choice now appeals this ruling, arguing that his offense should be punished as a misdemeanor under 18 U.S.C. § 924.  We conclude that to read the statute's misdemeanor provisions as governing the offense of willfully failing to keep records of a firearms transaction would run contrary to the plain meaning of § 924.  We therefore hold that Choice's offense is governed by the catch-all provision § 924(a)(1)(D), which designates willful violations of the firearms laws as felonies, and **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

On September 15, 1998, Choice was indicted on one count of "knowingly and willfully" selling a firearm without making a record of the sale, in violation of 18 U.S.C. § 922(b)(5).  A superseding indictment added one more count of violating 18 U.S.C. § 922(b)(5) and two counts of selling a firearm in violation of state law, in contravention of 18 U.S.C. § 922(b)(2).  Choice ultimately executed a Rule 11 plea agreement, pleading guilty to one count of willful failure to make a record of a firearm sale in violation of § 922(b)(5).  The agreement stated that Choice "knowingly and intentionally" sold one firearm without making a written record and that he "knew that he was required by law to make

to the "otherwise provided" language of § 924(a)(1). We believe that language is intended to make clear that § 924(a)(1) applies to all cases except those in which § 924 or § 929 has specifically denominated a substantive offense and its correlative punishment. Because we hold that the language of § 924(a)(3)(A) does not specifically encompass Choice's offense, that subsection does not "provide otherwise" than § 924(a)(1).

Because the result dictated by the plain language of the statute is sufficiently clear and not absurd, we find it unnecessary to examine the legislative history of §§ 922 and 924. We note, however, that the legislative history is inconclusive with respect to Congress's intended punishment for licensed dealers who willfully fail to keep records of firearms transactions. For example, the House report states that the Firearms Owners' Protection Act of 1986, amending the Gun Control Act of 1968 to include stricter mens rea requirements for certain firearms violations, "would provide a misdemeanor penalty for licensees who fail to make required entries or who fail to properly maintain their records." H.R. REP. NO. 99-495, at 16 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1342; *see also id.* at 26, *reprinted in* 1986 U.S.C.C.A.N. at 1352. However, such statements are of limited usefulness, since they do not distinguish between willful and knowing violations of the recordkeeping laws. We therefore rely upon the plain meaning of the statute and hold that the willful failure to keep records in violation of 18 U.S.C. § 922(b)(5) is a felony, punished under § 924(a)(1)(D).

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

such a record."[1] J.A. at 14 (Plea Agreement). A condition of Choice's plea was that the court would determine whether the offense charged was a felony or a misdemeanor. Choice also reserved the right to appeal that determination to this court.

The determination whether Choice pleaded guilty to a felony or a misdemeanor turns on which penalty provision governs the willful violation of 18 U.S.C. § 922(b)(5). The penalties for most violations of § 922 are contained in § 924. In particular, § 924(a)(3)(A) provides that any licensed dealer who *knowingly* "makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter" is guilty of a misdemeanor. Section 924(a)(1)(D), by contrast, provides that whoever "*willfully* violates" any provision of the chapter, other than those specifically named in § 924, is guilty of a felony (emphasis added).

The district court found that Choice had pleaded guilty to a felony and sentenced him to one day in prison and two years' supervised release.[2] Relying on *United States v.*

---

[1] In *Bryan v. United States*, --U.S.--, 118 S. Ct. 1939 (1998), the Supreme Court examined the mens rea requirements under § 924. It concluded that "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense," whereas "willfully" means that the defendant "acted with knowledge that his conduct was unlawful." *Id.* at 1946.

[2] After the pre-sentence investigation report recommended a sentencing range of 18 to 24 months, Choice filed a notice to reduce the charge from a felony to a misdemeanor and an alternative motion for a downward departure in his sentence. The 18- to 24-month range would have required revocation of the plea agreement, which was based on a calculation of the sentencing guideline range as being 6 to 12 months. The presentence report arrived at the 18- to 24-month range because it included an enhancement for the sale of more than 50 firearms, as charged in the third count of the superseding indictment. The district court granted the motion for a downward departure based on Choice's severe medical needs, resulting in a sentence of one day in prison, which was deemed served.

*Jarvouhey*, 117 F.3d 440 (9th Cir. 1997), *cert. denied*, 522 U.S. 1082 (1998), the only case in which a federal appellate court has considered the question, the district court held that § 924(a)(1)(D) applied. The district court's opinion rested on the fact that the two penalty provisions refer to two different states of mind. Because Choice pleaded guilty to a willful violation of the recordkeeping laws, the court found that § 924(a)(1)(D) applied. Choice filed a timely notice of appeal from that order.

## II. ANALYSIS

We note initially that, although Choice does not face any time in prison for his crime, there is still much at stake in the determination of whether he has pleaded guilty to a felony or a misdemeanor. If Choice is found to have committed a felony, he will suffer several restrictions of his civil rights. Under federal law, for example, he is not permitted to possess a firearm; thus, he can no longer earn his livelihood as a firearms dealer. *See* 18 U.S.C. § 922(g)(1); *cf. United States v. Butler*, 788 F. Supp. 944, 947-48 (E.D. Mich. 1991) (holding that, because Michigan law does not fully restore the civil rights of convicted felons who have served their sentences, § 922(g)(1) prohibits those individuals from possessing firearms). Furthermore, under Michigan law, convicted felons are prohibited from holding certain public offices and from serving on juries, even after their sentences have been completed. *See Butler*, 788 F. Supp. at 946-47. It is, therefore, with an awareness of the seriousness of the consequences for Choice that we decide this question.

Choice argues that, because the language of § 924(a)(3) applies exclusively to licensed firearm dealers (and licensed importers, manufacturers, and collectors), while § 924(a)(1) applies to "whoever" makes a false statement in connection with the sale of a firearm (such as a customer), § 924(a)(3) is the only penalty provision that applies to recordkeeping offenses by licensed firearms dealers. His reasoning is based on the limiting language of § 924(a)(1), which states that that provision applies "[e]xcept as otherwise provided in"

F. Supp. at 254. Although the government had attempted to charge the defendants with "willfully" violating the firearms regulations, thus invoking § 924(a)(1)(D), the court found that licensed dealers can only be charged with violating § 922(m), which provides that it is unlawful for a licensed dealer, manufacturer, or collector "knowingly to make false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep," a misdemeanor offense according to § 924(a)(3)(B). The district court's reasoning on this issue was sparse, but it appeared to base its conclusion on its belief that § 924(a)(3) was the only penalty provision that could apply to recordkeeping offenses by licensed dealers. *See Hunter*, 843 F. Supp. at 254 (citing *Percival*, 727 F. Supp. at 1019). *Hunter* is distinguishable in many ways from the instant case. First, like *Wegg*, *Hunter* dealt with a falsification offense, not a failure to keep records. As we have stated above, we believe that the language of § 924(a)(3)(A), which refers specifically to falsification offenses, is not broad enough to encompass the failure to keep records and is therefore inapplicable to such offenses. Second, it is unclear what recordkeeping provision the defendants in *Hunter* had allegedly violated: it appears that the government charged those defendants with violating § 923(g)(1)(A), which prescribes the information required to be recorded by licensed dealers, and with violating § 924(a)(1)(A), which outlaws knowing false statements by any person in connection with the recordkeeping, licensing, exemption, or disability relief requirements of the firearms laws. *See Hunter*, 943 F. Supp. at 239-40, 253-54. Thus, *Hunter* does not shed any light on how § 922(b)(5) violations should be treated.

We are therefore persuaded that the plain language of § 924 is sufficiently clear to dictate the conclusion that Congress intended to punish the willful failure of licensed firearms dealers to keep records of their sales as a felony and not as a misdemeanor. We believe that Choice's reading of the statute, suggesting that only § 924(a)(3) can apply to federally licensed dealers, is not supported by that plain language. We further note that we are not persuaded by Choice's reference

of the statute would lend support to the notion that Congress intended § 924(a)(1)(D) to govern the offense of willful failure to keep records: if licensed dealers who willfully neglect their recordkeeping duties could only be punished in the same way as those who knowingly do so, it would be more difficult to understand why Congress found it necessary to enact § 922(b)(5) as a wholly separate provision from § 922(m).

Choice also cites *United States v. Wegg*, 919 F. Supp. 898 (E.D. Va. 1996), and *United States v. Hunter*, 843 F. Supp. 235 (E.D. Mich. 1994), as supporting his position. However, neither of those precedents is persuasive in the present context. In *Wegg*, the district court for the Eastern District of Virginia delved into the legislative history of § 924, as well as examined the plain meaning of the statute and the *Percival* case, to determine that § 924 was intended to treat federally licensed dealers more leniently than others. *See Wegg*, 919 F. Supp. at 901-05. However, as the government points out, despite the district court's occasionally broad language, it is clear that the defendant in that case was convicted of aiding and abetting in making false statements with respect to a firearms transaction, not of failing to keep records. *See id.* at 899. Thus, the district court found that the conduct at issue was exclusively governed by § 924(a)(3)(A), which, by its terms, applies to false statements, but not to complete omissions in keeping a record.

In *Hunter*, the district court found that the government could only charge the defendants, federally licensed dealers, with misdemeanors for falsifying their records. *Hunter*, 843

---

However, § 924 does not prescribe any punishment for recordkeeping violations that are not at least knowing; therefore, § 922(b)(5) should probably be understood as applying primarily to willful offenses. *Cf. United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) (en banc) (noting that the 1986 amendments to § 924 were intended to abolish strict liability for violations of § 922); David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 CUMB. L. REV. 585, 645-53 (1987) (same).

§ 924(a), (b), (c), or (f), or in § 929. Because § 924(a)(3) otherwise provides for punishment of federally licensed firearms dealers, he reasons, § 924(a)(1) is inapplicable to those individuals. Choice also relies on the reasoning of the district court for the Eastern District of Virginia in *United States v. Percival*, 727 F. Supp. 1015 (E.D. Va. 1990), *aff'd*, 932 F.2d 964 (4th Cir.) (unpublished), *cert. denied*, 502 U.S. 919 (1991).[3] In that case, the defendant was convicted of violating § 922(b)(5) by willfully failing to keep records of several firearm sales. The court found that because the defendant was a federally licensed dealer, the plain language of § 924 indicated that only § 924(a)(3) was applicable to him. *See id.* at 1017. The court then examined the legislative history of the statute and, finding that it was ambiguous, noted that the policy of lenity also led the court to interpret the statute in the defendant's favor; thus, both the plain language of the statute and the ambiguous legislative history pointed to a result that favored the defendant. *See id.* at 1018-19.

The government, by contrast, notes that the Court of Appeals for the Ninth Circuit specifically rejected the reasoning of *Percival*. *See Jarvouhey*, 117 F.3d at 442. In *Jarvouhey*, the court held that it would defy the plain language of § 924, which provides different penalties for different degrees of intent, to conclude that only § 924(a)(3) can apply to licensed dealers who fail to make records of their sales. In addition, the government points out that § 924(a)(3)(A) provides punishment only for licensed dealers who make "false statement[s] or representation[s]" with respect to a firearm sale, whereas the defendant in the instant case was convicted not of making false statements but of failing to keep any records at all. For this reason, the government argues, only the catch-all provision for willful violations of the firearms laws, § 924(a)(1)(D), can apply.

---

[3] In affirming the district court in *Percival*, the Court of Appeals for the Fourth Circuit did not discuss the particular question at issue here.

Statutory interpretation questions are reviewed by this court de novo. *See United States v. Rettelle*, 165 F.3d 489, 491 (6th Cir. 1999). The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). However, this court also looks to "the language and design of the statute as a whole" in interpreting the plain meaning of statutory language. *United States v. Meyers*, 952 F.2d 914, 918 (6th Cir.), *cert. denied*, 503 U.S. 994 (1992). Finally, we may look to the legislative history of a statute if the statutory language is unclear. *See In re: Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir. 1999). If the statute remains ambiguous after consideration of its plain meaning, structure, and legislative history, we apply the rule of lenity in favor of criminal defendants. *See United States v. Hill*, 55 F.3d 1197, 1206 (6th Cir. 1995).

The plain language of this statute indicates that § 924(a)(1)(D) governs Choice's offense, and therefore the district court correctly found that Choice had pleaded guilty to a felony. By its terms, § 924(a)(3)(A) clearly applies only to licensed dealers who make false statements in connection with firearms sales, and not to those who fail to keep any records at all. *See Jarvouhey*, 117 F.3d at 442. Furthermore, § 924(a)(3)(A) refers only to knowing offenses and therefore implicitly excludes Choice's willful violation from its scope. *See id.* Thus, because § 922(b)(5) contains no penalty provision of its own, Choice's willful violation of failing to keep records is punished by the catch-all felony provision of § 924(a)(1)(D). Although a provision that prescribes the penalty for knowing violations might, in the absence of a more specific provision, be considered broad enough to encompass willful violations, here in contrast there is a provision – § 924(a)(1)(D) – that explicitly refers to the mens rea of willfulness. *See, e.g.*, *Edmond v. United States*, 520 U.S. 651, 657 (1997); *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932) ("General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part

of the same enactment.") Only the language of § 924(a)(1)(D) is both broad enough to encompass Choice's offense of failing to keep records and specific enough to apply to his willful offense.[4]

As Choice points out, this reading results in punishing licensed dealers who knowingly falsify records less harshly than dealers who willfully fail to keep any records at all. However, "[i]t is for Congress to decide whether a firearms dealer who willfully and completely fails to keep transaction records should be punished more severely than a dealer who knowingly makes false statements in his transaction records." *Jarvouhey*, 117 F.3d at 442. This result is not bizarre or clearly and demonstrably at odds with the drafters' intentions, as the legislative history, discussed below, shows. *See Ron Pair*, 489 U.S. at 242 (stating that the literal meaning of a statute should be overridden only in those rare cases where that meaning is demonstrably at odds with the intentions of the statute's drafters).

Our reading of the statute is bolstered by an examination of another aspect of the statutory scheme, the statute's treatment of knowing failures to keep records under § 922(m). Section 922(m) criminalizes knowing recordkeeping violations by licensed dealers, and § 924(a)(3)(B) makes it clear that violation of § 922(m) is a misdemeanor. Thus, there appears to be some overlap between § 922(m) and § 922(b)(5): the knowing failure to keep records would violate both provisions. This overlap suggests that § 922(b)(5), which contains no mens rea requirement of its own, is intended to govern when the failure to keep records involves a mens rea other than knowingness, that is, willfulness.[5] Such a reading

---

[4] Section 922(m) criminalizes *knowingly* falsifying records *or* failing to keep records. Violation of that section is punished as a misdemeanor, by the terms of § 924(a)(3)(B).

[5] Perhaps § 922(b)(5) could also be read to criminalize failing to keep records with a state of mind less than knowingness (for example, mere negligence) – if it is possible unknowingly to fail to keep records.