MURDOCK, Justice.
Don Davis, in his capacity as the Judge of Probate for Mobile County (“Judge Davis”), appeals from the Montgomery Circuit Court’s final judgment in favor of then Secretary of State Beth Chapman[1] (“the Secretary”) and the three members of the Mobile County Board of Registrars: Pat Tyrrell, Shirley Short, and Virginia *116 Delchamps (“the Board members”). This case concerns a regulation promulgated by the Secretary in an apparent effort to comply with certain federal election laws and an asserted conflict between that regulation and the residency requirement prescribed by three Alabama election statutes. We reverse the judgment of the circuit court.

I. Facts and Procedural History

A. Applicable Provisions of Federal and State Law

The Secretary is “the chief elections official in the state and shall provide uniform guidance for election activities.” § 17-1-3A(a), Ala.Code 1975. As the Judge of Probate for Mobile County, Judge Davis is “the chief elections official of the county.” § 17-l-3A(b), Ala.Code 1975. The Mobile County Board of Registrars is charged with “passing] favorably upon the person’s qualifications” to vote before a person is registered, § 17-3-1, Ala.Code 1975; maintaining an ongoing voter-registration list in Mobile County (“the County”), see, e.g., § 17-4-7, Ala.Code 1975; and purging from the voter list the names of individuals who no longer qualify to vote in the County because of death, incapacity, or a change of address, see § 17-4-3, Ala.Code 1975.
In addition to being the chief elections official for the State, the Secretary has been designated by the legislature as the state official charged with “promulgat[ing] rules and prescribing] forms and instructions as shall be necessary to implement the National Voter Registration Act of 1993 in Alabama or the Help America Vote Act of 2002.” § 17-4-63, Ala.Code 1975. Both of the federal acts mentioned in § 17-4-63, the National Voter Registration Act, 42 U.S.C. § 1973gg et seq. (“NVRA”), and the Help America Vote Act, Pub. L. 107-252, Title III, § 302, codified at 42 U.S.C. ,§ 15301 et seq. (“HAVA”), are implicated in this dispute.
More specifically, the issue before us is the effect, if any, of the foregoing federal statutes and a regulation promulgated by the Secretary on three Alabama election statutes. Accordingly, in addition to reviewing the relevant provisions of the federal statutes, we take note of the pertinent state statutes as they existed both before and after the enactment of the federal statutes.
Before the enactment of NVRA in 1993 and HAVA in 2002, three Alabama statutory provisions each provided that a voter could vote only in the. precinct or polling place designated for that voter’s current residence.[2] The first statute, § 17-6-5, Ala.Code 1975, originally enacted in 1989 and codified as § 17-5A-6, charged the judge of probate with making a “list of all the names of ... voters for each voting place.” The last sentence of § 17-5A-6 provided: “A vote cast at a place other than the voting place at which the voter is entitled to vote shall be illegal.”' (Emphasis added.)
Also “on the books” at the time NVRA and HAVA were enacted was § 17-7-13, the predecessor statute of what is now § 17-9-10, Ala.Code 1975, a provision that has been part of Alabama law since the Code of 1876. When the Code of 1975 was adopted, then § 17-7-13 provided:
“At all elections by the people of this state the elector must vote in the county *117 and precinct of his residence and nowhere else and must have registered as provided in this title; and, if any elector attempts to vote in any precinct other than that of his residence, his vote must be rejected, except as provided in section 17 — [1]3—2.”[3]
(Emphasis added.)
The third and final statute, the former version of what is now § 17-10-3, Ala. Code 1975, which dates back to 1947 and when the Code of 1975 was adopted was designated § 17-4-127, read as follows:
“It shall be unlawful for any elector to cast his or her ballot during any general election, primary election, municipal election or special election in any precinct, any district, any ward or any other subdivision where his or her name does not duly appear upon the official list of such precinct, district, ward or subdivision. All ballots cast in any election contrary to the provisions of this section are hereby declared illegal and, upon a contest duly instituted, such ballots shall be excluded in determining the final result of any election; provided, that nothing in this section shall prevent any qualified elector residing in said precinct, ward or voting district from voting after presenting a proper certificate from the board of registrars, or from voting a challenge ballot with the proper officials of said box or voting place.”
(Emphasis added.)
The “challenge ballot” allowed in the last clause of former § 17-4-127 was the means by which state law made allowance for voters whose eligibility was challenged by polling officials or whose names were not on the official list of qualified voters at the precinct of their residence. See former §§ 17-12-1 and -2, Ala.Code 1975, repealed by Act No. 2003-813, Ala. Acts 2003, § 12. A voter seeking to cast such a challenge ballot had to confirm his or her address within the precinct in which he or she sought to vote by personal oath and by the oath of another qualified elector in the precinct, and, if he or she could not do so, his or her vote was to be rejected. See former §§ 17-12-3 through -5, Ala.Code 1975, repealed by Act No. 2003-313, § 12.[4]
NVRA was enacted in 1993. It established certain registration-related procedures for elections for federal office. See 42 U.S.C. § 1973gg et seq. NVRA does not prescribe the registration procedures for state and local elections, but, “[b]e-cause it quickly became apparent that maintaining two sets of registration rolls would impose massive administrative and economic burdens, most states elected to adopt NVRA registration procedures for their state and local elections as well as federal elections, thereby producing a single, unified registration system and electorate.” Welker v. Clarke, 239 F.3d 596, 599 (3d Cir.2001). Alabama is one of the states that maintains a unified registration system so that its citizens do not have to follow two separate sets of procedures in order to vote in elections involving federal, state, and local offices. See Reg. 820-2-2-.01, Ala. Admin. Code (Sec *118 retary of State) (stating that NVRA “shall apply to all elections for state and local government offices in the State of Alabama”).
NVRA imposes restrictions on when a state is permitted to remove a voter’s name from its voter-registration list. See 42 U.S.C. § 1973gg-6(d). A voter’s name may be removed when the voter has confirmed in writing to the Board of Registrars that he or she has moved to another county. See 42 U.S.C. § 1973gg-6(d)(1)(A). Otherwise, a voter’s name may not be removed based on a change of address unless a voter fails to respond to a notice NVRA requires to be sent to the voter and thereafter fails to vote during the next two federal general elections. See § 1973gg-6(d)(l)(B). If the voter has moved within the county, the Board of Registrars simply must update the registry with the voter’s new address.
NVRA also prescribes procedures for how to process a voter who has failed to respond to the required notice but who has not yet been removed from the voter list. Concerning such voters, NVRA provides: “(e) Procedure for voting following failure to return card
“(1) A registrant who has moved from an address in the area covered by a polling place to an address in the same area shall, notwithstanding failure to notify the registrar of the change of address prior to the date of an election, be permitted to vote at that polling place upon’ oral or written affirmation by the registrant of the change of address before an election official at that polling place.
“(2)(A) A registrant who has moved from an address in the area covered by one polling place to an address in an area covered by a second polling place within the same registrar’s jurisdiction and the same congressional district and who has failed to notify the registrar of the change of address prior to the date of an election, at the option of the registrant—
“(i) shall be permitted to correct the voting records and vote at the registrant’s former polling place, upon oral or written affirmation by the registrant of the new address before an election official at that polling place; or
“(ii)(I) shall be permitted to correct the voting records and vote at a central location within the same registrar’s jurisdiction designated by the registrar where a list of eligible voters is maintained, upon written affirmation by the registrant of the new address on a standard form provided by the registrar at the central location; or
“(II) shall be permitted to correct the voting records for purposes of voting in future elections at the appropriate polling place for the current address and, if permitted by State law, shall be permitted to vote in the present election,[5] upon confirmation by the registrant of the new address by such means as are required by law.
“(B) If State law permits the registrant to vote in the current election upon oral or written affirmation by the registrant of the new address at a polling place described in subpara-graph (A)(i) or (A)(ii)(II), voting at the' other locations described in sub- *119 paragraph (A) need not be provided as options.”
42 U.S.C. § 1973gg-6(e) (emphasis added).
In the wake of Congress’s enactment of NVRA in 1993, no change was made to any of the three state statutes at issue, now codified as §§ 17-6-5,17-9-10, and 17-10-3. Nonetheless, in 1994, in response to the above-quoted portion of NVRA, and notwithstanding § 1973gg-6(e)(2)(B), then Secretary of State Jim Bennett promulgated Reg. 820-2-2-.13, Ala. Admin. Code (Secretary of State),[6] entitled “Fail-Safe Voting.” Subdivision (1) of the regulation states:
“(1) A registrant who has moved from an address in the area covered by one polling place to an address covered by a second polling place within the same Board of Registrar’s jurisdiction and who has failed to notify the Board of Registrars of the change of address pri- or to the date of an election shall be permitted to correct the voting records with the registrant’s new address and vote at the registrant’s former polling place.”
(Emphasis added.)
In 2002, Congress enacted HAVA, which became effective January 1, 2004. See 42 U.S.C. §§ 15301-15545. HAVA’s purpose was to alleviate the problem of voters “ar-rivfing] at the polling place believing that they are eligible to vote, and then [being] turned away because election workers cannot find their names on the list of qualified voters.” H.R.Rep. No. 107-329, at 38 (2001). To address this problem, HAVA required, among other things, that states provide for what HAVA referred to as “provisional balloting,” that is, a system under which a ballot would be submitted on election day but counted only if the person easting the provisional ballot was later determined to have been entitled to vote.[7] Specifically, § 302 of HAVA imposed a requirement on all states that they provide voters the opportunity to cast “provisional ballots” under the following circumstances:
“(a) Provisional voting requirements.
“If an individual declares that such individual is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office, but the name of the individual does not appear on the official list of eligible voters for the polling place or an election official asserts that the individual is not eligible to vote, such individual shall be permitted to cast a provisional ballot as follows:
“(1) An election official at the polling place shall notify the individual that the individual may cast a provisional ballot in that election.
“(2) The individual shall be permitted to cast a provisional ballot at that polling place upon the execution of a written affirmation by the individual before an election official at the polling place stating that the individual is—
“(A) a registered voter in the jurisdiction in' which the individual desires to vote; and
“(B) eligible to vote in that election.
“(3) An election official at the polling place shall transmit the ballot cast by *120 the individual or the voter information contained in the written affirmation executed by the individual under paragraph (2) to an appropriate State or local election official for prompt verification under paragraph (4).
“(4) If the appropriate State or local election official to whom the ballot or voter information is transmitted under paragraph (3) determines that the individual is eligible under State law to vote, the individual’s provisional ballot shall be counted as a vote in that election in accordance with State law.”
42 U.S.C. § 15482 (emphasis added). HAVA provides federal funding for elections to those states that comply with its requirements. 42 U.S.C. § 15301(a).
As previously noted, before the enactment of HAVA, the last sentence of what is now § 17-6-5 provided that “[a] vote cast at a place other than the voting place at which the voter is entitled to vote shall be illegal.” As was true following the enactment of NVRA, no change was made (or has been made) to this sentence in the wake of the enactment of HAVA. See Act No. 2006-570, Ala. Acts 2006 (renumbering what was formerly § 17-5A-6 as § 17-6-5).
Essentially the same can be said of what are now §§ 17-10-3 and 17-9-10. Apparently in an effort to ensure that Alabama law did not run afoul of HAVA’s new requirements for what it called “provisional ballots,” in 2003 the Alabama Legislature did amend the last sentence of § 17-10-3, then § 17-4-127, to refer to “provisional ballots” rather than “challenge ballots.” In all other aspects, this sentence remained unchanged. As before, the sentence does not affirmatively prescribe either “challenge” or “provisional” ballots, but states merely that “nothing in this section shall prevent” such ballots from being cast. Moreover, the sentence expressly references the casting of such ballots only by “qualified electors] residing in the precinct, ward, or voting district.”[8]
*121 As it did in amending the predecessor of the predecessor of § 17-10-3 in an effort to ensure consistency with the requirements of HAVA, the legislature in Act No. 2003-313 also amended the last clause of the predecessor of § 17-9-10 to expressly reference “provisional ballots.” Specifically, the legislature substituted for the prior reminder in the final clause that “improperly marked ballots” must be handled as otherwise provided by law, language confirming that an elector may vote a provisional ballot “as provided by law”:
“At all elections held within this state, the elector shall vote in the county and precinct of his or her residence and nowhere else and shall have registered as provided in this title. If any elector attempts to vote in any precinct other than that of his or her residence, his or her vote shall be rejected, except when casting a provisional ballot, as provided by law.”
(Emphasis added.) In Act No. 2006-570, the legislature renumbered § 17-7-13 to its current designation, § 17-9-10, and changed the term “precinct” to “voting place” and “residence” to “domicile”:
“At all elections held within this state, the elector shall vote in the county and voting place of his or her domicile and nowhere else and shall have registered as provided in this title. If any elector attempts to vote in any voting place other than that of his or her domicile, his or her vote shall be rejected, except when casting a provisional ballot, as provided by law.”
Act No. 2006-570 (emphasis added).[9]

B. Procedural History

Before the Alabama primary election of 2012, then Secretary Chapman sent an email on March 10, 2012, to all the Board of Registrars offices in the state providing “instructions and reminders prior to the primary election.” The instructions included the following based on Reg. 820-2-2-.13, Ala. Admin. Code (Secretary of State):
“1) Voters who have moved within the county but have not updated
“• If a voter has moved from one part of your county to another part of your county but has not updated her record, she may vote
“• by regular ballot at her old polling place, or
“• by provisional ballot [at] her new polling place. The provisional ballot will count if it shows that she voted in the correct polling place for the address where she now lives (as indicated on the update form that is part of the PB-3 Provisional Ballot Statement).”
Judge Davis alleged that those instructions violated Alabama law because the instructions — and the regulation upon which they were based — allowed voters to cast ballots at polling places designated for locations in which the voters did not re *122 side. During the primary election, the Board members implemented the instructions in the e-mail, counseling poll workers who sought instruction concerning how to process voters who had moved to a location in the County that was serviced by a different polling place but who had failed to update their registration to allow those voters to cast regular ballots at their former polling place. In contrast, the Mobile Probate Court counseled poll workers who sought instruction concerning how to process such voters to direct the voters to cast provisional ballots at the polling places designated for their current residences. Judge Davis alleged that approximately 20,000 active registered voters in the County had mailing addresses that differed from the addresses reflected in the Board of Registrars’ voter list. As a result of the conflicting instructions provided to poll workers, an unprecedented number of provisional ballots were cast in the primary election.[10]
Following the primary election and in anticipation of the November general election, Judge Davis, on August 3, 2012, filed a complaint in the Montgomery Circuit Court seeking a judgment declaring Reg. 820-2-2-.13 unlawful, an injunction against then Secretary Chapman and the Board members, and a writ of mandamus directed to then Secretary Chapman. Judge Davis contended that Reg. 820-2-2-.13 is contrary to state and federal law. On the same day, Judge Davis filed a motion for a preliminary injunction and for an expedited hearing. On August 13, 2012, then Secretary Chapman filed her opposition to Judge Davis’s motion for a preliminary injunction. The following day the circuit court held a hearing on the motion. No testimony was taken. On August 15, 2012, the parties jointly filed a motion to consolidate the preliminary-injunction hearing with the trial on the merits.
On September 13, 2012, the circuit court entered an “Order and Final Judgment,” which reflected that the preliminary-injunction hearing had been consolidated with the final trial on the merits. The circuit court denied the motion for a preliminary injunction and the petition for a writ of mandamus, and it entered a final judgment in favor of the Secretary and the Board members: The order provided, in part:
“[Davis] has challenged the validity of an administrative rule promulgated by the Office of the Secretary of State. Said rule pertains to voters who have moved from one address to another within the same county but who have not updated their voter registration information with the county board of registrars before election day. The rule in question, Ala. Admin. Code § 820-2-[2 — ].13, allows such voters to cast a regular ballot at their old precinct so long as the voter updates his voter registration on election day.
“The Court finds that the promulgation of the above-cited rule falls within the *123 rule-making powers of the Secretary of State pursuant to Code of Alabama §§ 17-4-60 and 17-4-63 (2006).[11] See also A.G. opinion 2012-071. The Court further finds that the rule is consistent with the requirements of [NVRA].”
Judge Davis appeals the circuit court’s September 13, 2012, order.

II. Standard of Review

No testimony was taken in the trial below, and the circuit court’s decision solely involved the construction and interpretation of statutes and regulations. Therefore, our standard of review is clear.
“Our standard of review is de novo: ‘Because the issues presented by [this appeal] concern only questions of law involving statutory construction, the standard of review is de novo. See Taylor v. Cox, 710 So.2d 406 (Ala.1998).’ Whitehurst v. Baker, 959 So.2d 69, 70 (Ala.2006). This Court has also said:
“ ‘[I]t is this Court’s responsibility in a case involving statutory construction to give effect to the legislature’s intent in enacting a statute when that intent is manifested in the wording of the statute. Bean Dredging[, LLC v. Alabama Dep’t of Revenue ], 855 So.2d [513] at 517 [ (Ala.2003) ].... “““If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ” ’ ” Pitts v. Gangi, 896 So.2d 433, 436 (Ala.2004) (quoting DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala.1998), quoting in turn earlier cases). In determining the intent of the legislature, we must examine the statute as a whole and, if possible, give effect to each section. Employees' Retirement Sys. of Alabama v. Head, 369 So.2d 1227, 1228 (Ala. 1979).’
“Ex parte Exxon Mobil Corp., 926 So.2d 303, 309 (Ala.2005).”
Ex parte Birmingham Bd. of Educ., 45 So.3d 764, 767 (Ala.2009).

III. Analysis

The issue presented is whether Reg. 820-2-2-13(1), Ala. Admin. Code (Secretary of State), violates state law and is therefore void. As noted, § 17-9-10, Ala.Code 1975, provides:
“At all elections held within this state, the elector shall vote in the county and voting place of his or her domicile and nowhere else and shall have registered as provided in this title. If any elector attempts to vote in any voting place other than that of his or her domicile, his or her vote shall be rejected, except when casting a provisional ballot, as provided by law.”[12]
*124 Section 17-6-5, Ala.Code 1975, commands that “[a] vote cast at a place other than the voting place at which the voter is entitled to vote shall be illegal.” (Emphasis added.) Further, § 17-10-3 expressly states that “[ ]it shall be unlawful for any elector to cast his or her ballot ... in any precinct, any district, any ward, or any other subdivision where his or her name does not duly appear upon the official list,” with only one exception: “any qualified elector residing in the precinct, ward, or voting district ” may cast a “provisional ballot” in that location. Because “[t]he provisions of a statute will prevail in any case of a conflict between a statute and an agency regulation,” Ex parte Jones Mfg. Co., 589 So.2d 208, 210 (Ala.1991), Judge Davis contends that the circuit court should have declared Reg. 820-2-2-.13(l) void.
The Secretary[13] contends that, notwithstanding the aforesaid statutes, her obligation to ensure the State’s compliance with federal law requires the application of Reg. 820-2-2-13(1) instead of Alabama’s statutory law in the instance where a voter has failed to update his or her registration following a change of address in the same county to a location that is serviced by a different polling place. Specifically, the Secretary contends that NVRA requires the State to allow such voters to vote by regular ballot at their former polling place.
The dispute between the parties is a matter of first impression for our courts. There are no Alabama cases interpreting Reg. 820-2-2-13(1) or the applicable provisions of NVRA or HAVA, and the circuit court did not provide any substantive analysis of NVRA.
In evaluating the contentions of the parties, it is perhaps helpful to begin by noting that
“NVRA does not require a state to pass legislation. The Supremacy Clause, U.S. Const., Art. VI, Cl. 2, renders [NVRA] binding on state officials even in the absence of any state legislative action. Any inconsistent state voter registration laws or state procedures for federal elections are simply preempted and superseded.”
Association of Cmty. Organizations for Reform Now v. Miller, 912 F.Supp. 976, 984 (W.D.Mich.1995), aff'd, 129 F.3d 833 (6th Cir.1997). Thus, if NVRA and state law conflict, NVRA prevails. Conversely, if NVRA does not override Alabama statutory law on this subject, Reg. 820-2-2-.13(1) is due to be declared void.
As we detailed in Part I.A., the applicable portion of NVRA provides:
“(e) Procedure for voting following failure to return card
[[Image here]]
“(2)(A) A registrant who has moved from an address in the area covered by one polling place to an address in an area covered by a second polling place within the same registrar’s ju *125 risdiction and the same congressional district and who has failed to notify the registrar of the change of address prior to the date of an election, at the option of the registrant—
“(i) shall be permitted to correct the voting records and vote at the registrant’s former polling place, upon oral or written affirmation by the registrant of the new address before an election official at that polling place [‘option 1’]; or
“(ii)(I) shall be permitted to correct the voting records and vote at a central location "within the same registrar’s jurisdiction designated by the registrar where a list of eligible voters is maintained, upon written affirmation by the registrant of the new address on a standard form provided by the registrar at the central location [‘option 2’]; or
“(II) shall be permitted to correct the voting records for purposes of voting in future elections at the appropriate polling place for the current address and, if permitted by State law, shall be permitted to vote in the present election,[14] upon confirmation by the registrant of the new address by such means as are required by law [‘option 3’].
“(B) If State law permits the registrant to vote in the current election upon oral or written affirmation by the registrant of the new address at a polling place described in subpara-graph (A)(i) or (A)(ii)(II), voting at the other locations described in sub-paragraph (A) need not be provided as options.”
42 U.S.C. § 1973gg-6(e) (emphasis added).
Section 1973gg-6(e)(2)(A) states that this portion of NVRA applies to a voter who has moved within the same county and the same congressional district but who has failed to update his or her voter registration before the election.[15] “NVRA specifically affords states considerable latitude in how to administer” its provisions. National Voter Registration Act of 1993, 59 Fed.Reg. 32311-01 (June 23, 1994). Illustrative of this fact is § 1973gg-6(e)(2)(B), which essentially provides that if a state’s law allows a voter to vote under one of the three options described in § 1973gg-6(e)(2)(A), it does not have to provide the other options.[16] Consistent *126 with this understanding, the parties agree that Alabama law does not — and need not — provide voters with “a central location within the same registrar’s jurisdiction” at which to cast a ballot (option 2). § 1973gg-6(e)(2)(A)(ii)(I).
The parties’ understanding of Alabama law and the requirements of § 1973gg-6(e)(2) diverge in relation to option 1 and option 3. Judge Davis contends that option 3 — voting at the polling place designated for the voter’s current residence — is provided under Alabama law through voting by provisional ballot. Section 17-10-3, Ala.Code 1975, provides:
“It shall he unlawful for any elector to cast his or her ballot during any general election, primary election, municipal election or special election in any precinct, any district, any ward, or any other subdivision where his or her name does not duly appear upon the official list of the precinct, district, ward, or subdivision. All ballots cast in any election contrary to this section are hereby declared illegal and, upon a contest duly instituted, the ballots shall be excluded in determining the final result of any election; provided, that nothing in this section shall prevent any qualified elector residing in the precinct, ward, or voting district from voting after presenting a proper certificate from the board of registrars, or from voting a provisional ballot or a provisional ballot in municipal elections when his or her name does not duly appear upon the official list of the precinct, district, ward, or subdivision.”
(Emphasis added.) According to Judge Davis, because provisional balloting fulfills the requirements of option 3, the State is not required to permit voting under option 1 (at the polling place for the voter’s former residence), as Reg. 820-2-2-.13(l) purports to allow.
The Secretary contends that casting a provisional ballot does not satisfy option 3 and that, therefore, the State is required to permit a voter to cast a regular ballot under option 1, despite the fact that doing so violates §§ 17-9-10, 17-6-5, and 17-10-3. The reason a provisional ballot does not satisfy option 3, according to the Secretary, is that provisional balloting did not exist when NVRA was enacted in 1993. Provisional balloting was a creation of HAVA in 2002, and it was implemented in Alabama by Code changes that became effective in 2004.' See Act No. 2003-313. The text of option 3 provides that a voter will only be allowed to vote at the polling place for his or her current address “if permitted by State law.” § 1973gg-6(e)(2)(A)(ii)(II). Thus, the Secretary argues that option 3 cannot be referring to provisional balloting because provisional balloting was a creation of federal, not state, law. The Secretary also notes that, in enacting HAVA, Congress did not expressly amend option 3 to state that a voter “shall be permitted to vote provisionally” at his or her current polling place. In sum, the Secretary contends that Judge Davis’s interpretation of § 1973gg-6(e)(2)(A) would mean that “option 3 [implicitly] took on a new meaning once [HAVA] was passed” even though HAVA *127 specifically provides that “nothing in this Act may be construed to authorize or require conduct prohibited under [NVRA].” See 42 U.S.C. § 15545(a)(4).
The Secretary is correct that option 3 does not expressly refer to provisional balloting. This does not mean, however, that provisional balloting cannot satisfy the criteria of option 3. The language of option 3 does not specify the type of vote a voter must be permitted to cast.[17]' It simply states that, “if permitted by State law, [a voter] shall be permitted to vote in the present election, upon confirmation by the registrant of the new address by such . means as are required by law.” § 1973gg-6(e)(2)(A)(ii)(II). Under Alabama law, an individual who casts a provisional ballot
“shall execute a written affirmation ... before the inspector or clerk stating the' following:
“ ‘State of Alabama, County of_ I do solemnly swear (or affirm) that I am a registered voter in the precinct in which I am seeking to vote and that I am eligible to vote in this election [with provision for signature, address, and date of birth].’
“(3) The individual shall complete a voter reidentification form prescribed by the Secretary of State for use in updating the state voter registration list....”
§ 17-10-2(b)(2) and (3), Ala.Code 1975. As stated, § 19733gg-6(e)(2)(A)(ii)(II) of NVRA, option 3, contemplates that voters seeking to vote at their new polling place will “correct their voting records.” Thus, not only is the casting of a provisional ballot not prohibited by option 3, an affidavit of the type that characterizes a provisional ballot is expressly contemplated by option 3.
It might still be asked whether option 3 whs available to a voter in Alabama before the implementation of HAVA and the ensuing adoption in Alabama of “provisional balloting” by the legislature’s enactment of § 17-10-2 effective June 19, 2003. See Act No. 2003-313, § 5. In other words, at the time Reg. 820-2-2-13(1) was initially promulgated in 1994, could a voter cast a vote at his or her current polling place in a manner other than by provisional ballot?
Before the enactment of § 17-10-2, however, Alabama law provided:
“It shall be unlawful for any elector to cast his or her ballot during any general election, primary election, municipal election or special election in any precinct, any district, any ward or any other subdivision where his or her name does not duly appear upon the official list of such precinct, district, ward or subdivision. All ballots cast in any election contrary to the provisions of this section are hereby declared illegal and, upon a contest duly instituted, such ballots shall be excluded in determining the final result of any election; provided, that nothing in this section shall prevent any qualified elector residing in said precinct, ward or voting district from voting after presenting a proper certificate from the board of registrars, or from voting a challenge ballot with the proper officials of said box or voting place.”
Former § 17-4-127, Ala.Code 1975 (emphasis added). In other words, a voter whose name did not appear on the Board of Registrars’ voting list at a particular polling location but who resided in the precinct serviced by that polling location could vote by casting a “challenge ballot.” A voter casting a challenge ballot had to “take and subscribe an oath” that consisted of the following:
“ ‘State of Alabama, County of_I do solemnly swear (or affirm) that: 1. I *128 am a duly qualified elector under the constitution and laws of the State of Alabama. 2. That I am 18 years of age or upwards. 3. That I have not been convicted of any crime which disfranchises me. 4. That I have been duly registered. 5. I know of no reason why I am not entitled to vote. 6.1 am generally known by the name under which I now desire to vote, which is_7. I have not voted and will not vote in any other precinct (or if the precinct has been divided into districts, in any other voting district) in this election. 8. My occupation is , the name of my employer is _9. My residence is_(if in a city or town give street number). 10. That _and_have personal knowledge of my residence in the State of Alabama. 11. This affidavit has been read to me. So help me God. _ Signature. Subscribed and sworn to before me this_ day_, 19_
Former § 17-12-3, Ala.Code 1975 (repealed by Act No. 2003-313, § 12, effective June 19, 2003). Additionally, such'a voter had to
“prove his identity, residence in the state, county and precinct in which he offers to vote by the oath of some elector personally known to some one of the inspectors to be a qualified elector ■and a freeholder and householder, which oath shall be administered by one of the inspectors, and be in the following form:
“ ‘State of Alabama, County of_ I,_do solemnly swear (or affirm) that I have known _ (here insert the name of the person offering to vote) preceding this election, and that he has been a resident of this state, in this county, and he actually resides in this precinct or district at the time of this election. I do solemnly swear (or affirm) that I am a qualified elector of this precinct; that I have been a freeholder and householder in this precinct for one year next preceding this election; that my occupation is __; my residence is_; my business address is_; Subscribed and sworn to before me this_day of_, 19_’
“and, upon such oath being duly taken and subscribed, the ballot of the person offering to vote must be received and deposited as other ballots of qualified electors, and the inspectors shall require the persons making said affidavits to swear to and subscribe to an original and a carbon, the carbon to be treated as an original, one set of said affidavits, when so taken and subscribed when the election is closed, shall be sealed by the inspectors in a sealed package and forwarded to the district attorney for the county, who shall lay them before the next grand jury sitting for the county. The other set of said affidavits shall be sealed and deposited in the ballot box.”
Former § 17-12-4, Ala.Code 1975 (repealed by Act No. 2003-313, § 12).
As noted, option 3 of NVRA contemplated that a recently moved “registrant” be able to vote at the polling place applicable to his or her new address “if permitted by State law” and “upon confirmation by the registrant of the new address by such means as are required by law.” The text of the above-quoted statutes applicable to voters in Alabama before June 19, 2003, were the “means” by which such voting was “permitted by State law.”
In short, at all times since the enactment of NVRA, Alabama law has provided, and continues to provide, voters with option 3 (voting at the polling place designated for the voter’s new residence). Because option 3 was and continues to be available to voters in Alabama, NVRA did not at the time of its enactment, and does not now, require Alabama to make available option 1 (voting at the polling place *129 designated for the voter’s former residence).
Section 17-6-5 has not changed in any respect in the wake of Congress’s enactment of NVRA and HAVA; it still expressly makes it “illegal” for an elector to vote other than at his or her proper polling place. Nor has § 17-10-3 changed in any material way in the wake of the enactment of NVRA and HAVA. It now makes reference to “provisional ballots” rather than “challenge ballots” as it did before HAVA, but it still expressly limits the use of such ballots to “qualified elector[s] residing in the precinct, ward, or voting district” to which they must attest they currently live.
Nor does the post-HAVA change made by the legislature to § 17-9-10 work any change in the aforesaid rule. The timing of the amendments to our election law regarding “provisional ballots” in the immediate wake of the enactment of HAVA, including the amendment to § 17-9-10 to allow such ballots as “provided by law,” makes clear that the legislature was simply trying to ensure that Alabama’s statutes were worded in a way that would accommodate Congress’s new “law.” As other courts have since held, however, Congress did not intend, or purport, by HAVA to override such a traditional state-election-law requirement — one as fundamental, and perfunctory — as requiring voters to vote in the precinct in which they live.[18]
In Sandusky County Democratic Party v. Blackwell, 387 F.3d 565 (6th Cir.2004), the United States Court of Appeals for the Sixth Circuit noted with approval statements in HAVA’s legislative history suggesting that the term “jurisdiction” in that statute “means the particular state subdivision within which a particular State’s laws require votes to be cast.” 387 F.3d at 575. Referring to provisions of Ohio election statutes similar to the Alabama statutes at issue here, the court aptly explained:
“In the absence of a compelling reason for defining HAVA’s use of this term to mean the geographic reach of the unit of government that maintains the voter registration rolls, we look to the overall scheme of the statute to determine its meaning. See United States v. Choice, 201 F.3d 837, 840 (6th Cir.2000) (ruling that ‘this court also looks to the language and design of the statute as a whole in interpreting the plain meaning of statutory language’) (internal quotation marks and citation omitted). No *130 where in the language or structure of HAVA as a whole is there any indication that the Congress intended to strip from the States their traditional responsibility to administer elections; still less that Congress intended that a voter’s eligibility to cast a provisional ballot should exceed her eligibility to cast a regular ballot. After all, the whole point of provisional ballots is to allow a ballot to be cast by a voter who claims to be eligible to cast a regular ballot, pending determination of that eligibility.
“In Ohio, like many other states, a voter may cast a ballot only in his or her precinct of residence. See Ohio Rev. Code Ann. § 3503.01 (West 2004) (providing that an eligible voter ‘may vote at all elections in the precinct in which the citizen resides’); Ohio Rev.Code Ann. § 3599.12(A)(1) (West 2004) (making it a crime under Ohio law for a voter to knowingly vote anywhere except in the precinct in which he or she resides). As such, in Ohio, HAVA requires that a provisional ballot be issued only to voters affirming that they are eligible to vote and are registered to vote in the precinct in which they seek to cast a ballot.”
387 F.3d at 575-76 (emphasis added).
Similarly, in James v. Bartlett, 359 N.C. 260, 267-71, 607 S.E.2d 638, 642-45 (2005), the North Carolina Supreme Court explained:
“The plain language of the [North Carolina] statute clearly and unambiguously states that a voter is ‘qualified to register and vote in the precinct in which he resides.’ Id. (emphasis added). Furthermore, N.C.G.S. § 163-55 refers three separate times to ‘the precinct’ and one additional time to ‘one precinct.’ Had the General Assembly intended that each voter be permitted to cast a ballot at his precinct of choice, this statute would surely have employed the phrase ‘any precinct’ or ‘a precinct.’ “Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.’ Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). The plain meaning of section 163-55 is that voters must cast ballots on election day in their precincts of residence.
[[Image here]]
“The conclusion that a provisional ballot must be cast in a voter’s precinct of residence is supported by other regulatory and statutory provisions concerning the use of provisional ballots. In 2003, the General Assembly ratified N.C.G.S. § 163-166.11, which addresses voters who appear at a precinct polling place on election day but are not listed on the registration records for that precinct. Pursuant to section 163-166.11, such voters may cast a provisional ballot at the precinct and later have their ballots counted if it is determined that the voter was eligible to vote. Section 163-166.11 was created in response to Congress’ passage of the Help America Vote Act (HAVA) of 2002, 42 U.S.C. §§ 15481-15485 (2002), which mandated that such provisional ballots be made available for federal elections beginning in January 2004. Act of June 11, 2003, ch. 226, sec. 1, 2003 N.C. Sess. Laws 341, 353-54.[19] ... In our review, we have found no indication that Congress’ intent in passing HAVA, or our state legislature’s intent in passing N.C.G.S. § 163-166.11, was to enable voters to cast valid ballots outside their precincts of residence when such a vote would not otherwise be supported by state law.
*131 [[Image here]]
"... [I]t is but a perfunctory requirement that voters identify their proper precinct and appear within that precinct on election day to cast their ballots. Voters may identify their precinct via mail, telephone, Internet, or in person at their local boards of elections. Election officials are expected to work with voters to help them locate their correct precinct. Indeed, when a voter appears at the wrong polling place, election officials have a statutory duty to assist the voter in finding the correct precinct in which to vote. N.C.G.S. § 163-82.15(e).”

IV. Conclusion

Alabama statutory law continues to require, as it long has, that voters who have moved cast ballots at the polling place designated for their new address.[20] Further, Ala. Admin. Code (Secretary of State), Reg. 820-2-2-13(1), was not and is not required by NVRA or HAVA. Because Reg. 820-2-2-.13(l) expressly contradicts Alabama statutory law, it is void.
The circuit court’s judgment is due to be reversed and the cause remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and STUART, BOLIN, PARKER, SHAW, MAIN, and BRYAN, JJ., concur.
WISE, J., recuses herself.

. While this appeal was pending, Secretary of State Chapman resigned from office, and Jim Bennett was appointed Secretary of State. He was automatically substituted as one of the appellees. See Rule 43(b), Ala. R.App. P. Secretary Bennett had previously served as Secretary of State.

. Of course, all three of these statutes refer only to persons who have registered to vote in a timely manner. See generally § 17-3-50 et seq., Ala.Code 1975 (amended by Act No. 2014-428, Ala. Acts 2014, effective July 1, 2014). Nothing in NVRA or HAVA purports to change state registration requirements. See, e.g., 42 U.S.C. § 1973gg-6(e)(2)(A) (stating that NVRA applies to "[a] registrant”).

. The statute referenced at the end of § 17-7-13, i.e., § 17-13-2, provided the procedure to be followed in the event of an "improperly marked ballot.”

. In addition, former § 17-12-6 provided that a voter who gave a "false oath” in attesting to his or her current address and other necessary information committed the felony of perjury, punishable by a sentence of up to two years in prison. Former § 17-12-7 provided that any “inspector of election” who receives a vote from a challenged voter without requiring the sworn oath as to the person’s address and related information was guilty of a misdemeanor. Both sections were repealed by Act No. 2003-313, § 12.

5. We understand this to be a reference to voting in the polling place designated for the voter's new, i.e., "current,” address.

. The history of the regulation states that it was promulgated in 2001, but that date refers to a recodification of the regulation; the parties agree that the text of the regulation was promulgated in 1994.

. HAVA also requires each state to maintain "a single, uniform, official, centralized, interactive computerized statewide voter registration list.” 42 U.S.C. § 15483(a)(1)(A). See also § 17-4-33, Ala.Code 1975.

. Thus, Act No. 2003-313 amended former § 17-4-127 to read in its entirety as follows (with changes emphasized):
"It shall be unlawful for any elector to cast his or her ballot during any general election, primary election, municipal election or special election in any precinct, any district, any ward, or any other subdivision where his or her name does not duly appear upon the official list of the precinct, district, ward, or subdivision. All ballots cast in any election contrary to this section are hereby declared illegal and, upon a contest duly instituted, the ballots shall be excluded in determining the final result of any election; provided, that nothing in this section shall prevent any qualified elector residing in the precinct, ward, or voting district from voting after presenting a proper certificate from the board of registrars, or from voting a provisional ballot when his or her name does not duly appear upon the official list of the precinct, district, ward, or subdivision."
In Act No. 2003-313, the legislature also repealed Chapter 12 of Title 17, see Act No. 2003-313, § 12, providing for "challenge ballots” and adopted in its place what is now § 17-10-2, which provides for "provisional ballots” as prescribed by HAVA. See discussion, infra.
In 2006, Act No. 2006-570 amended and renumbered the former § 17-4 — 127 to be the current § 17-10-3. At that time, the legislature also added a clause referring to the casting of "challenged ballotfs] in municipal elections,” a provision not pertinent here except for what it may reveal regarding a perceived equivalence of the purpose of the "provisional ballots” required by Congress and the former "challenge ballots.” The clause at the end of § 17-10-3, as amended by the legislature in 2006, read with this added reference emphasized:
"[Pjrovided, that nothing in this section shall prevent any qualified elector residing in the precinct, ward, or voting district from voting after presenting a proper certificate from the board of registrars, or from voting a provisional ballot or challenged ballot in municipal elections when his or *121 her name does not duly appear upon the official list of the precinct, district, ward, or subdivision.”
Act No. 2006-570, § 50 (according to the "Code Commissioner’s Notes” to § 17-10-3, the Code Commissioner changed the term "challenged” in the above-emphasized passage to "provisional”).

. In making the latter changes to § 17-9-10 and amending other election laws in Act No. 2006-570, the legislature stated that its purpose was to “to modernize the language, to resolve ambiguities that have arisen from multiple enactments over the years, to incorporate judicial decisions and constructions of language, to incorporate administrative rules, and to make other technical changes to Title 17, all without making any substantive change in existing law.” Act No. 2006-570, § 90 (emphasis added).

. The conflicting instructions prompted Judge Davis and the Board members to seek an opinion from the Alabama Attorney General concerning the parties' actions surrounding the 2012 primary election. The attorney general's opinion on the matter concluded that
"[b]ecause the voting provisions of [NVRA] and [HAVA] ... work together, when a voter's name appears on the precinct voter registration list, but the voter has moved to a 'new' precinct in the county and has not updated his or her voter registration records with the board of registrars, the voter may use the fail-safe voting provision to cast a regular ballot at his or her former ('old') polling place and update the voting record for future elections or a voter may use the provisional ballot process to vote at his or her current ('new') polling place.”
Op. Ala. Att'y Gen. No. 2012-071 (July 27, 2012).

11. Section 17-4-60(a) provides that "[t]he Secretary of State shall be the primary state official for federal contact for the implementation of [NVRA] and [HAVA].”

. The plain language of § 17-9-10 prohibits a voter from voting at a former polling place. This section does make reference, however, to casting a provisional ballot if and when "provided by law.” Section 17-10-2 now governs provisional balloting under Alabama law. It provides for provisional balloting in the following circumstances'.
“(1) The name of the individual does not appear on the official list of eligible voters for the precinct or polling place in which the individual seeks to vote, and the individual's registration cannot be verified while at the polling place by the registrar or the judge of probate.
"(2) An inspector has knowledge that the individual is not entitled to vote at that precinct and challenges the individual.
"(3) The individual is required to comply with the voter identification provisions of Section 17-10-1 but is unable to do so....
*124 “(4) A federal or state court order extends the time for closing the polls beyond that established by state law and the individual votes during the extended period of time....
“(5) The person has requested, but not voted, an absentee ballot.”
(Emphasis added.) The intent of § 17-9-10 is further made clear in § 17-10-3, which reaffirms that one may not vote at a polling place in a location where he or she does not live, but that for purposes of provisional balloting such a circumstance should not be confused with the circumstance where the voter’s name merely does not appear on the list of qualified voters for that location. See discussion in text following this note and infra at note 18.

. The Board members, in their brief to this Court, elected to adopt in its entirety the brief submitted by the Secretary. Therefore, this opinion refers to the Secretary when describing the arguments of all the appellees.

14. As previously noted, see note 5, supra, this paragraph references a voter's being permitted by state law to vote in the polling place designated for the voter’s new address.

. Judge Davis states that eight counties in Alabama contain multiple congressional districts and yet, as written, Reg. 820-2-2- 13(1) applies to all Alabama counties. Judge Davis contends that Reg. 820-2-2- 13(1) violates federal law because it allows voters who move within the same county but to a different congressional district to vote according to the options provided in 42 U.S.C. § 1973gg-6(e)(2). The Secretary concedes that "[Reg.] 820 — 2—2—. 13(1) does not include a restriction on crossing Congressional District lines, but since Mobile County is in a single Congressional District ... any issue which might be caused by the lack of restriction is not operative in this case.” Be that as it may, our holding in this case by its nature necessarily governs voting procedures throughout the State.

.A survey of other states shows that they have implemented § 1973gg-6(e)(2)(A) of NVRA in a variety of ways. For example, Delaware does not permit a voter to cast a ballot at the voter's former polling place, but such a voter can vote at his or her current polling place after filling out an eligibility affidavit that will be reviewed by the state's Department of Election. See Del.Code Ann. Tit. 15, § 2047. New Jersey permits a voter to cast a ballot only at his or her new polling place (by provisional ballot, if necessary, after affirming the change of address). See N.J. Stat. Ann. §§ 19:31-11, 19:53C-3. Pennsyl *126 vania permits a voter to cast a regular ballot at his or her former polling place following affirmation of the change of address. See 25 Pa. Cons.Stat. Ann. § 1902(a)(2). Rhode Island permits a voter to cast a regular ballot at his or her former or current polling place or at a central location following an affirmation of the change of address. See R.I. Gen. Laws Ann. § 17 — 9.1—16(a)(2). South Carolina permits a voter to cast a provisional ballot at his or her former polling place or to vote at a central location. See S.C.Code Ann. § 7-5-440(B). Tennessee permits a voter to cast a ballot only at his or her new polling place following affirmation of the change of address. See § 2-7-140, Tenn.Code Ann.

. In fact, NVRA does not define the term "vote” in any of its provisions.

. Sections 17-9-10, 17-6-5, and 17-10-3 all make clear, in strongly worded provisions, that a voter simply may not vote where he or she does not live. Although as has already been noted, see note 12, supra, § 17-9-10 references the possibility of voting a provisional ballot "as provided by law," § 17-6-5 contains no such reference. Furthermore, § 17-10-3 informs the reference in § 17-9-10 to the voting of provisional ballots as "provided by law” by explaining that if the voter is a “qualified elector residing in the precinct, ward, or voting district," then, in that circumstance, he or she may cast a provisional ballot. In other words, the purpose of provisional balloting, insofar as it is relevant to this case, is merely to allow a voter to overcome a challenge to his or her qualifications or the omission of his or her name from the official list of electors for the polling place where he or she lawfully seeks to vote, not to vote in a place where he or she does not live. See generally § 17-10-2, Ala.Code 1975.
Indeed, to interpret 17-9-10 as allowing for provisional voting at a location where the voter does not live would be to provide for a futile act or, perhaps better put, a statutory scheme that "meets itself coming.” All the aforesaid statutory sections state in clear and commanding terms that a ballot cast by a voter in a location where he or she does not in fact reside is "illegal.” In order to cast a provisional ballot in the type of circumstances at issue, a voter would have to certify his or her current address, thereby documenting the very fact that would make his or her ballot illegal and thereby prevent it from ever being counted under these statutes.

19. N.C.G.S. § 163-166.11 is the equivalent of Alabama’s § 17-10-2 and was enacted at about the same time and for the same reason, as discussed below in the quoted passage.

. Under certain limited circumstances described in Ala.Code 1975, §§ 11-46-38 and 11-46-109, this requirement does not apply to municipal elections; however, "regular municipal elections” "are held at times different from elections held by the State and counties.” Fluker v. Wolff, 46 So.3d 942, 951 (Ala.2010) (discussing municipal-election laws set out in § 11-46-1 et seq., Ala.Code 1975).